## SULLIVAN et al. v. GRAY et al.

No. 27402. March 15, 1938.

Rehearing Denied April 26, 1938.

F. M. Dudley and Sullivan & Marmaduke, for plaintiffs in error.

Wm. G. Davisson and Potterf, Gray & Poindexter, for defendants in error.

HURST, J. This case involves the construction of a contract providing for the extension of the term of an oil and gas lease under certain conditions. In order that there may be a clear understanding of the facts and the contract, we attach a plat of the lease. (Plat is shown on following page.)

The controversy arose in the following manner: On July 25, 1916, C. F. Sullivan executed an oil and gas lease to the Carter Oil Company covering 100 acres which he owned, 80 acres of which was a tract comprising the north half of a quarter section, and the other 20 acres consisted of a contiguous 10-acre tract to the north and a separate 10-acre tract a short distance away. The primary term of the lease was five years, and in 1918 well No. 1 was drilled in the northwest corner of the 80-acre tract, and in 1919 or 1920 well No. 2 was drilled on the contiguous 10-acre tract to the north. In 1920 other parties drilled well No. 3 on adjoining land about 150 feet south of the 80-acre tract. All three were producing wells. No more wells having been drilled on this lease, on August 25, 1930, C. F. Sullivan and the Carter Oil Company entered into the contract in question. It was therein agreed that the Carter Oil Company would pay C. F. Sullivan the sum of $1,490 in settlement of all prior claims for damages for failure to protect against drainage by the offset well, and provided for the extension of the term of the lease in the following two paragraphs which are the subject of this controversy:

Paragraph 8. "First Party further agrees to pay to Second Party hereafter, within a reasonable time after the end of each three calendar months and as soon as the same can be ascertained, an amount equal to one-half of the current market value. as fixed by the major pipe line companies. of the royalty oil (not exceeding one-eighth) produced and marketed during the preceding three months from said well in the N. E.¼ S. W.¼ S. E.¼ of said sec-

488

tion 36, beginning with the production on and after August 1. 1930, such payments to continue unless and until First Party shall commence the drilling of a well in the Said S. E.¼ N. W.¼ S. E.¼ or shall surrender and release to Second Party, the said lease as to such ten acres."

Paragraph 9. "**Excluding the last mentioned ten acres** and the two ten-acre tracts upon which First Party has heretofore drilled wells, First Party further agrees to pay to the Second Party in lieu of drilling operations an annual advance drilling delay rental of $1.00 per acre, commencing July 25, 1931, on each remaining ten-acre subdivision of land embraced in said lease, such payments to continue during the life of said lease. not to exceed five years from the date of this contract, **further however, that should a well be commenced within five (5) years from the date of this contract on any ten acre subdivision heretofore undeveloped, First Party shall have an additional five years to the five years already granted in this paragraph in which to continue the above lease in force, as to the seventy acres covered by this paragraph, by paying the annual advance delay rentals as herein provided,** and provided further. that upon the commencement of a well upon any such ten acre subdivision by First Party or upon the release or surrender thereof to Second Party by First Party, no rental shall thereafter be due or payable as to such ten acres. * * *"" (Emphasis ours.)

On June 30, 1933, Carter Oil Company assigned their interest in the lease and contract to defendant Earl Q. Gray. In July, shortly before the expiration of the five-year term referred to in this contract, well No. 4 was drilled on the 10-acre tract offsetting well No. 3 on the adjoining property. On November 20, 1935, C. F. Sullivan conveyed his interest to two of his children, Jerome C. Sullivan and Gussie Lee McGee, who on the same day conveyed certain portions of the mineral rights to their six brothers and sisters. The remaining portion of the mineral rights appeared to have been acquired by C. E. Sykes by judgment in a former suit. The record discloses that at the commencement of the action, plaintiffs were the owners of the surface rights and one-eighth of the royalty, and their brothers and sisters, together with C. E. Sykes, were the owners of the remaining royalty. This action is one to quiet title and was filed on December 4. 1935. The plaintiffs claimed that the lease expired on August 25. 1935, as to the 70 acres undeveloped, for the reason that under the terms of the contract the lessee was required to drill on some part of this 70 acres, and the offset well drilled on the 10-acre tract did not save this remaining 70 acres for an additional five years. On the other hand, the defendants claimed

that under the proper construction of the contract the drilling of this well was sufficient to extend the term of the lease for another five years. The trial court construed the contract as urged by defendants and rendered judgment in their favor, from which judgment plaintiffs bring this appeal.

The plaintiffs contend that the drilling of a well "on any ten-acre subdivision heretofore undeveloped" within five years from August 25, 1930, is a condition precedent to the enlargement of the estate for an additional five years, and that as this condition has not been performed, the lease expired by its own terms. It is thus argued that this is not an action to have a forfeiture declared for failure to perform covenants, either express or implied, but is merely an action to quiet title and rid the record of a lease already at an end. But this argument assumes the question in controversy—Has the requirement in the contract been performed? This is a pure question of construction.

We are not unmindful of the rule that an oil and gas lease will be construed most strongly against the lessee so as to promote development and prevent delay and unproductiveness, looking to all parts of the instrument in the light of the facts contained in the record. Summer's Oil and Gas, p. 372; Superior Oil & Gas Co. v. Mehlin (1910) 25 Okla. 809, 108 P. 545; Paraffine Oil Co. v. Cruce (1916) 63 Okla. 95, 162 P. 716. But all parties to this action contend that the lease is unambiguous, and have tried it and argued it on that theory. The intention of the parties must be deduced from the entire agreement, and every provision must be construed so as to be consistent with each other and that construction adopted which, if possible, gives effect to every part of the contract. Prowant v. Sealy (1919) 77 Okla. 244, 187 P. 235; Hammett Oil Co. v. Gypsy Oil Co. (1921) 95 Okla. 235, 218 P. 501; Continental Supply Co. v. Levy (1926) 121 Okla. 132, 247 P. 967.

In their reply brief, plaintiffs present the construction which they seek to have adopted in support of their argument that the requirement of the contract had not been performed. They contend that paragraph 8 deals only with the 10-acre tract therein referred to, and that the requirements for extending the lease as to the remaining 70 acres are separate and distinct and are specified in paragraph 9. They rely upon the first sentence of paragraph 9, wherein

it is said: "Excluding the last-mentioned ten acres and the two 10-acre tracts upon which first party has heretofore drilled wells. * * *" But, considering the contract in its entirety, we think this phrase refers only to the delay rental provision of that paragraph. It reads thus:

"Excluding the last mentioned ten acres and the two ten-acre tracts upon which First Party has heretofore drilled wells, First Party agrees to pay Second Party in lieu of drilling operations an annual advance drilling delay rental of $1.00 per acre, commencing July 25, 1931, on each remaining ten acre subdivision of land embraced in said lease, such payments to continue during the life of said lease, not to exceed five years from the date of this contract. * * *"

Plaintiffs further contend that paragraph 9 is expressly limited by the clause "the 70 acres covered by this paragraph," and therefore it was intended to mean that a well must be commenced on some part of this 70 acres in order to give the privilege of paying delay rentals to continue the lease for an additional five years. Paragraph 9 in this regard reads:

"* * * further however, that should a well be commenced within five (5) years from the date of this contract on any ten acre subdivision heretofore undeveloped, First Party shall have an additional five years to the five years already granted in this paragraph in which to continue the lease in force, as to the seventy acres covered by this paragraph, by paying the annual advance delay rentals as herein provided, and provided further, that upon the commencement of a well upon any such ten-acre subdivision by First Party * * * no rental shall thereafter be due or payable as to such ten acres." (Emphasis ours.)

But to adopt this construction and limit the application of this paragraph to 70 acres would emasculate the clause "any ten-acre subdivision heretofore undeveloped," because in fact no well had been drilled on the ten-acre subdivision referred to in paragraph 8, at that time, and it was in fact also undeveloped. We think the phrase "as to the 70 acres covered by this paragraph" refers to the manner in which the lease is to be kept alive for the additional term as to that 70 acres in the event a well is commenced on "any ten-acre subdivision heretofore undeveloped," that is, by payment of delay rentals. It is to be kept alive as to the ten-acre tract referred to in paragraph 8 by payment of the specified royalty.

But plaintiffs further contend that the

490

payment of the specified royalty on the ten-acre tract referred to in paragraph 8, in effect, makes that tract developed acreage, and thus not referred to by the clause "any ten-acre subdivision heretofore undeveloped." But this acreage was in fact not developed, and we cannot accede to the fiction that the provision for payment of royalty constituted development for the purpose of determining the intent of the language of the contract. There is nothing therein to indicate that it should be so considered and we must take the facts as they exist.

Considering the two paragraphs together, we construe the contract to mean that the lease shall be extended as to the ten-acre subdivision referred to in paragraph 8 by the payment of royalty, and as to the remaining undeveloped 70 acres by the payment of rental; that if the lessee shall, within five years from the date of the contract, commence a well upon any ten-acre subdivision of this undeveloped 80 acres, the lease shall continue in force for an additional five years. Thus, if a well should be drilled on the 10 acres referred to in paragraph 8, the lessee would be relieved of the obligation to pay offset royalty and would thereby have the privilege of extending the other 70 acres for an additional term of five years by payment of rental. But if the well should be drilled on any portion of the remaining 70 acres (excluding the ten acres referred to in paragraph 8), then the lessee would be required to continue to pay offset royalty on the ten acres referred to in paragraph 8, and would have the privilege of extending the lease on the remaining 60 acres by payment of rental. The well was located on the 10 acres referred to in paragraph 8 within the required time, and thus the lessee need pay no royalty to hold that ten acres. and in addition, by drilling the well on that ten acres, the lessee "shall have an additional five years to the five years already granted in this paragraph (9) in which to continue the above lease in force as to the 70 acres covered by this paragraph (9) by paying the annual advance delay rentals as herein provided." This interpretation, which is the one applied by the trial judge, gives effect to every part of the contract. The defendants make other contentions in support of the judgment of the trial court, but in view of our interpretation of the contract, it is not necessary to discuss them further.

Judgment affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, PHELPS, and CORN, JJ., concur. WELCH, GIBSON, and DAVISON, JJ., dissent.

GIBSON, J. (dissenting). I cannot agree with the interpretation placed on the contract by the majority opinion.

The 10 acres for which royalty was being paid by reason of an offset well was plainly considered by the parties as a developed tract. The contract amounts to a perpetual lease as to that tract, so long as oil is produced from the offset. That 10 acres, the development of which at this time defendant claims extends the lease for 5 years on another 70 acres, is entirely removed from further consideration in the contract. The statement "As to the seventy acres covered by this paragraph" clearly excludes the aforesaid 10 acres. There is no logical reason for saying that the parties intended that the commencement of a well on that 10 acres would do more than relieve the lessee from further royalty payments measured by the offset well.

I therefore dissent.