## LUKE et al. v. AMERICAN SURETY CO. OF NEW YORK.

No. 29953. April 15, 1941.

Supplemental Opinion July 8, 1941.

*114 P. 2d 950.*

Earl A. Brown, of Dallas, Tex., and Dolman, Dyer & Dolman and W. W. Potter, all of Ardmore, for plaintiffs in error.

Chandler, Shelton, Fowler & Swinford, of Oklahoma City, for defendant in error.

HURST, J. Plaintiff American Surety Company brought this action to recover a loss sustained and paid by it under a blue-sky bond in which one Wolverton was principal and plaintiff was surety. Liability of defendants therefor was asserted under the terms of an application for such bond, which application was signed by defendants and by Wolverton. The case was tried to the court, a jury being waived, and when plaintiff rested defendant announced that they would not introduce evidence in their behalf, and moved for judgment because of the insufficiency of plaintiff's evidence. The trial court overruled the motion, and rendered judgment for plaintiff. Defendants appeal.

Defendants make two contentions: (1) That the application signed by them on its face creates no obligation against them; and (2) that the bond executed by plaintiff for Wolverton, and under which the loss was sustained by plaintiff, was not the bond described or referred to in the application which defendants signed.

1. The application for the bond is lengthy. After setting out the nature, amount, name of applicant, name of obligee, probable length of time the bond

will run, and amount of premium, it provides that "should the American Surety Company of New York, hereinafter called the surety, execute, or procure the execution of the suretyship hereinbefore applied for, or other suretyship in lieu thereof, the undersigned, hereinafter called the Indemnitor, do in consideration thereof, jointly and severally undertake and agree," etc. Then follow various paragraphs of obligations assumed by the signers: Some of these obligations are of a nature which require or contemplate performance by the principal named in the bond. Others are such as could be assumed by persons other than the principal. It provides that the indemnitor "will perform all the conditions of said bond, and any and all modifications, renewals and extensions thereof, and will at all times indemnify and save the surety harmless from and against every claim, demand, liability, cost," etc., whatsoever. It also provides that it shall cover not only the suretyship above recited, but all alterations, renewals, extensions or modifications thereof which may be requested or assented to by the principal named in the bond. It does not name the defendants in the body of the instrument, but is signed by them and acknowledged before a notary public. After the signature of defendant Tucker appears the following: "($1,000.00 liability limit)." Defendants argue that there is nothing in the contract which binds them, and the mere fact that their signatures appear thereon does not make them parties to it, citing 13 C. J. 572, and numerous cases in support of their contention. They assert that the application is not a unilateral, but a bilateral, contract between plaintiff and Wolverton, and that as no bond was written for them, no premiums paid by them, and they had no interest in the business conducted by Wolverton, it clearly appears from the face of the contract that they did not assume any liability, or at least it is not possible to ascertain from an examination thereof just what are their liabilities or obligations.

We think the contract is one of indemnity as defined by section 9648, O. S.

1931, 15 O.S.A. § 421. In the interpretation of such contracts, the cardinal rule is that which applies to contracts generally, namely, to ascertain the intention of the parties and to give effect to that intention if it may be done consistently with legal principles. Clifford v. United States Fidelity & Guaranty Co., 119 Okla. 133, 249 P. 938. And the whole contract must be considered in arriving at such intent. Section 9465, O. S. 1931, 15 O.S.A. § 157; Sullivan v. Gray, 182 Okla. 487, 78 P. 2d 688. When the application is so considered, it is clear that defendants undertook and engaged themselves, if plaintiff made the Wolverton bond, to indemnify and save plaintiff harmless from any loss which it might sustain by so obligating itself. The fact that the application was also signed by Wolverton, and that performance by him of certain conditions therein contained was contemplated, does not render the contract unenforceable as to those conditions or obligations which rested alike upon both him and the defendants. For example, only Wolverton could perform the conditions of the bond, for it was conditioned upon his compliance with the laws governing dealers in securities. But the condition or obligation to at all times indemnify and save harmless the plaintiff was not personal to Wolverton, but could also be performed by defendants, and that obligation they assumed when they executed the application. No other purpose appears which would justify their execution and acknowledgment thereof, and the notation after the name of defendant Tucker clearly indicates such purpose. None of the defendants took the stand to deny that purpose, or to explain why they signed the instrument.

The application does not contain mutual covenants and agreements, but is unilateral. It binds plaintiff in no respect. It is an offer to incur certain obligations, and to perform certain acts, in the event the bond is made by plaintiff. The nature of the contract is in this respect similar to that considered in Stoutz v. Wilson Motor Co., 176 Okla. 316, 55 P. 2d 990, in which the defendant Stoutz was a cosigner of a chattel

mortgage made by the owner of property in which Stoutz had no interest, and upon which mortgage the court held him liable. The same argument was made in that case as is made by defendants here, but the liability was enforced in accordance with the intent of the parties. We consider the decision in that case controlling upon this phase of the instant case.

2. Defendants' second contention is based upon the fact that Wolverton failed to make an application and pay the statutory registration fee for the year 1934 within the time specified in section 6, ch. 121, S. L. 1933, 71 O.S.A. § 41, and was notified by the commissioner that his registration was terminated, and that it would be necessary for him to file a new application for registration. It appears that this requirement was later waived and a dealer's license was issued by the commissioner to Wolverton. The law provides that applications for renewal of registration must be made not less than 30 nor more than 60 days before the first day of the ensuing year, "otherwise they shall be treated as original applications." The records of the Securities Commissioner showed that from 1931 to 1936 Wolverton paid his registration fees and received a dealer's license issued by the Securities Commissioner for each year, and that no bond other than the one made by plaintiff in 1931 was required of him. Wolverton filed an application for renewal of his registration for the year 1933, but the commissioner testified that no form of application for renewal was used for 1934, 1935, and 1936, renewals usually being granted on letters from applicants.

The bond recited that it was a "continuous obligation and shall cover the full period or periods of registration" of Wolverton as a dealer in securities, "including the present registration and all renewals or new registrations which said principal obligor may be granted upon written application therefor." The requirement of a written application was one which plaintiff could waive. The contract signed by defendants provided that it covered all extensions, alterations, renewals, or modifications of the bond which might be requested or assented to by Wolverton.

The meaning of the phrase "shall be treated as original applications" in the statute is obscure. It is to be noted that no new or different application and no new bond are specifically required. Evidently the commissioner construed it as giving him power to make such requirements if he desired. In the case of Wolverton he did not require them, but accepted the statutory fee and issued the license as a renewal. The license having so issued as a renewal, without any requirement that a new and different bond be made, the bond was continued or extended to cover the additional term. It was an extension thereof as contemplated by the contract.

In Minton v. American Surety Co. of New York, 184 Okla. 602, 88 P. 2d 883, we held that if such a bond were canceled and another substituted therefor, the latter was merely a continuation of the former bond. It therefore becomes immaterial whether the Securities Commissioner treated Wolverton's informal application for renewal of registration as an original application or a renewal, and the bond as extended or renewed. In either event it was within the terms of the indemnity contract.

Affirmed.

WELCH, C. J., CORN, V. C. J., and GIBSON and ARNOLD, JJ., concur.

---

Supplemental Opinion.

PER CURIAM. It has been called to the attention of the court that prior to the filing of the opinion in this cause one of the plaintiffs in error, to wit, Simon Westheimer, departed this life April 17, 1941, but subsequent to the date on which the cause was assigned. In accordance with the rule announced in Spencer v. Hamilton, 156 Okla. 194, 13 P. 2d 81, and House v. Gragg, 170 Okla. 550, 44 P. 2d 832, the opinion filed May 27, 1941, is withdrawn with directions that it be filed under date of April 15, 1941.