367 P.2d 280

**Lloyd A. RUSH, d/b/a Rush Construction Co., Plaintiff-Appellant,**

v.

**G–K MACHINERY CO., a corporation, Defendant-Respondent.**

No. 9024.

Supreme Court of Idaho.

Dec. 20, 1961.

A. A. Merrill, L. H. Merrill, Idaho Falls, for appellant.

Anderson, Kaufman & Anderson, Boise, for respondent.

SMITH, Justice.

Appellant brought this action seeking to recover a balance of moneys allegedly due and owing from respondent growing out of the sales of two pieces of heavy equipment—a crane and a dump truck. The crane was peaceably repossessed under a defaulted conditional sales contract, and the truck, encumbered by a mortgage as additional security for payment of the contract, was peaceably delivered for sale.

A dispute arose out of the settlement on the sales of the equipment. Appellant asserted there was still due and owing $4,340.05 from the sale of the crane and $3,345.00 from the sale of the truck; that the truck belonged to appellant, instead of to Hayden J. Foster as asserted by respondent (or to Foster's estate); and that Foster (or his executor or administrator) was not a proper party to the action as asserted by respondent.

At the conclusion of a pre-trial conference, where respondent's motion to dismiss the action was treated as a motion for summary judgment, I.R.C.P., Rule 12(b), the trial court entered judgment in favor of respondent, dismissing the action. Appellant perfected an appeal therefrom.

Inasmuch as the facts are somewhat complicated we shall set them forth in some detail.

Appellant Lloyd A. Rush conducted business as Rush Construction Company until "shortly before the first of the year 1959" when he took in a partner, Hayden J. Fos-

ter; whereupon "Rush owned 60 percent of the partnership business and Foster 40 percent," according to Mr. Rush's affidavit.

On January 2, 1959, the partners entered into a written conditional sales contract with respondent to purchase the crane for the time sale price of $64,114.73, upon which respondent credited $7,620.82 for machinery traded in, leaving owing a balance of $56,-494.91. As collateral security for payment thereof, the partners executed and delivered to respondent a chattel mortgage encumbering their dump truck.

Respondent, with the knowledge of the partners, transferred the conditional sales contract to C.I.T. Corporation, respondent remaining liable for payment of the indebtedness. Thereafter the partners made payments according to the contract to C. I.T. Corporation for the months of February and March, 1959, totaling $2,671.08.

Next, the partners, on May 27, 1959, entered into a contract in writing, entitled "Agreement for Winding Up and Dissolution of Rush Construction Co., a partnership." By this contract Hayden J. Foster transferred most of his interest in the partnership business to Lloyd A. Rush, retaining however the dump truck involved in this proceeding, which the parties set over to Foster. The parties then covenanted that the partnership theretofore existing between them was dissolved, and that neither party

had any claim or demand whatsoever against the other party.

On or about June 20, 1959, payments on the conditional sales contract being delinquent, the parties, Rush and Foster, agreeably returned the crane, and delivered the mortgaged truck, to respondent to be sold and payment to be made from the proceeds on the balance owing to C.I.T. Corporation. The balance due such Corporation during June 1959 after crediting the unused carrying charge on the time sale price was $44,440.88.

On June 29, 1959, following such delivery of the equipment, respondent leased the crane to a third party. In the meantime all the parties tried to sell the truck. Respondent found a buyer for the truck on September 19, 1959, and accomplished its sale for the sum of $6,250, which respondent alleges was reasonable. Appellant thereupon voluntarily endorsed the title to the truck for transfer to the buyer.

During April 1960 the lessee of the crane exercised an option to purchase it for the sum of $48,000. Thus respondent collected as proceeds of the sales of both pieces of equipment the sum of $54,250.00.

Following the sale of the crane, and on June 27, 1960, respondent remitted to "Lloyd A. Rush, H. Jay Foster and Rush Construction Co." its voucher check for $5,469.07, showing thereon:

"Total proceeds obtained from sale of crane and
    1958 Ford truck                                        $ 54,250.00
Less payoff Cond. Sale Contract to CIT    $ 44,440.88
Less selling expenses                     4,340.05
                                           48,780.93      48,780.93
                 Balance ----------------$   5,469.07"

Accompanying this check was respondent's letter which, after referring to the transaction, stated:

"We are enclosing our check drawn to Lloyd A. Rush, H. Jay Foster and Rush Construction Co. This check is tendered on the basis that it represents full settlement with all parties on this complete transaction. Details of this transaction are on the voucher part of this check attached thereto. Upon your cashing of this check, we will consider the matter closed."

From the proceeds of this check Foster on or about June 29, 1960, received through his attorneys the sum of $1500, from Mr. Rush, who handled "all the business transactions," which was "as and for any interest he (Foster) may have in the crane and truck irrespective of the written dissolution agreement." (Affidavit of Pearl Rush.) Thereupon on August 1, 1960, the parties, Rush and Foster, executed a mutual release in writing, each releasing the other from all claims and demands whatsoever. Thereafter as developed by appellant's brief and argument, Foster died before the trial court's disposition of respondent's motion to dismiss, the record not showing the exact date.

Recapitulation of the financial transactions herein before recited are as follows:

| 1959 | | | 1959 | |
|---|---|---|---|---|
| Jan. 3 | Sale price of crane | $ 52,105.00 | Sept | Proceeds, sale of truck --$ 6,250.00 |
| | Carrying charge for 72 months | 12,010.73 | | |
| | Total time sale price | $ 64,115.73 | | |
| | Credit for machinery traded in | 7,620.82 | | |
| | Mortgage to C.I.T. Corporation on truck as additional security | –0– | | |
| | Net time sale price ------ | $ 56,494.91 | | |
| Feb–March | 2 cash payments --- | 2,671.08 | | |
| | Balance owing --------- | $ 53,823.83 | | |
| June | Credit for unused carrying charge --------- | 9,382.95 | | |
| 1960 | | | 1960 | |
| | Balance on financed crane contract paid C.I.T. Corporation --------------- | $ 44,440.88 | April | Proceeds, sale of crane --$ 48,000.00 |
| June 27 | Paid respondent expenses of sale ----------------- | 4,340.05 | | |
| | Paid balance to appellant, check No. 5403 --------- | 5,469.07 | | |
| | | $ 54,250.00 | | $ 54,250.00 |

———◆———

Appellant in his complaint alleged his ownership of the dump truck. He alleged, inasmuch as the crane sold for $48,000,—more than enough to pay off the debt of $44,440.88 owing to C.I.T. Corporation,—that respondent should not have sold the truck, and alleged damages growing out of the sale of the crane and truck.

Respondent in an affirmative defense alleged, inasmuch as its transactions with Rush Construction Company were entered into and executed by the partners, Rush and Foster, that, in addition to appellant, Foster was an indispensable party to the action.

Appellant in answer alleged that the partners had wound up their affairs by their agreement of dissolution of May 27, 1959, and that in view of the mutual release executed by them August 1, 1960, Foster had no interest in the cause of action and was not a necessary party.

At the pre-trial conference appellant introduced in evidence the agreement of dissolution of the partnership of Rush and

Foster, as appellant states, "For the purpose of showing that Foster, who, after receiving settlement of $1500, and after he had signed all releases, subsequently died * * *, and was not a necessary or proper party."

■ Respondent's motion to dismiss the action for failure to state a claim upon which relief can be granted is, in the main, grounded upon: First, that the agreement of dissolution shows that the dump truck was set over to Foster; that appellant (plaintiff) had no interest in the truck after May 27, 1959, and that any claim for its wrongful disposition, if such there was, belonged to Foster. Second, that as appellant alleges, respondent sold the crane for $48,000.00 which was $3,559.12 more than the balance of $44,440.88 owing to C.I.T. Corporation, and that respondent made settlement with appellant by payment of $5,469.07, which was $1,909.95 more than appellant was entitled to receive, since he no longer had any interest in the truck; that any claim for damages in the premises belonged to Foster and not to appellant.

Appellant assigns as error the trial court's granting of respondent's motion to dismiss and entry of the judgment of dismissal of the action.

Inasmuch as matters "outside the pleadings" in the form of affidavits and exhibits were presented to the trial court and considered, the motion for dismissal was properly "treated as one for summary judgment and disposed of as provided in rule 56." I.R.C.P., Rule 12(b).

We are constrained to the view that the record before us shows no genuine issue as to any material fact; nor does the record raise the question of credibility of witnesses or weight of the evidence. I.R.C.P., Rule 56(c); Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 352 P.2d 657.

Appellant contends that his allegation, that the dump truck was not to be sold if the crane sold for more than enough to pay the indebtedness owing to C.I.T. Corporation, presented such an issue of fact as to preclude the dismissal. He also contends that the truck, being mortgaged to the Corporation, should not have been sold except by foreclosure proceedings.

Appellant cannot sustain such contentions because of the following: (1), the voluntary delivery to respondent of the truck, about the time of redelivery of the crane, for purposes of sale; (2), the transfer of the truck to the new purchaser, pursuant to appellant's endorsement of the truck's title, at a time long before consummation of the sale of the crane, and (3), the transfer to the new purchaser of title to the truck clear of any mortgage lien in favor of C.I.T. Corporation. Moreover, as shown by the agreement of dissolution of the partnership, appellant assigned his interest in the truck to Foster, now deceased, and neither Foster nor his personal representative was made a party to this action.

Appellant contends he only conditionally accepted respondent's bank check for $5,469.07. This is not borne out by the record as the following shows: June 30, 1960, appellant through his counsel wrote a letter to respondent in which, after acknowledging receipt of such check, he requested payment or credit of relatively small items in view of the amount charged "for selling the machine," not objecting, however, to the check or to its accompanying accounting; and appellant dismissed his second cause of action which related to those relatively small items.

Respondent urges that remittance of its check for $5,469.07 upon the unqualified conditions of tender, on the basis "it represents full settlement with all parties on this complete transaction. * * * upon the cashing of this check we will consider the matter closed," constituted an accord and satisfaction. With this we agree.

The crane and the dump truck were delivered for the purpose of extinguishing the debt owing to C.I.T. Corporation, the parties, at the time of the delivery or at any time before the sales, not having set a price at which the property should be valued or sold; nor had they agreed concerning equipment repairs before the sale, nor as to expenses chargeable on the sale. The entire transaction, looking to liquidation of the debt and financial accounting, was fraught with the uncertainty attendant to the lack of meeting of the minds as regards details, with the resulting fertile field for misunderstandings between the parties, thus necessitating settlement upon the basis of accord and satisfaction. The transaction was not comparable to one requiring payment or performance of an obligation according to exact or agreed terms of an existing contractual relation, but rather, was one involving the giving and accepting of something different,—in this case the heavy equipment to be converted into cash,—rather than cash which the creditor had a right to insist upon, with respondent's duty incident to the transaction of accounting for its details. Inasmuch as there existed a basis for dispute, the theory of accord and satisfaction constituted the feasible approach for settlement, and the parties so settled their differences.

In 1 Am.Jur., Accord and Satisfaction, § 24, p. 225, the rule is well stated:

"The creditor to whom a check is sent or other remittance made as payment in full has the option either of accepting it on the conditions on which it is sent, or of rejecting it. When a claim is in dispute, and the debtor sends to his creditor a check or other remittance which he clearly states is in full payment of the claim, and the creditor accepts the remittance or collects the check without objection, it is generally recognized that this constitutes a good accord and satisfaction."

**18**

See also Clay v. Rossi, 62 Idaho 140, 108 P.2d 506; Potter v. Pacific Coast Lumber Co. of California, 37 Cal.2d 592, 234 P.2d 16; Edgar v. Hitch, 46 Cal.2d 309, 294 P.2d 3; Wilmeth v. Lee and Booth (Okl.), 316 P.2d 614; Lafferty v. Cole, 339 Mich. 223, 63 N.W.2d 432; Virginia-Carolina Electrical Works v. Cooper, 192 Va. 78, 63 S.E.2d 717; Wilson v. Woolf (Tex.Civ. App.), 274 S.W.2d 154; 1 C.J.S. Accord and Satisfaction p. 460 et seq.; Anno. 34 A.L.R., p. 1035; Anno. 75 A.L.R., p. 905.

The judgment of dismissal is affirmed. Costs to respondent.

TAYLOR, C. J., and KNUDSON, Mc-QUADE and McFADDEN, JJ., concur.