525 P.2d 969

**Leroy COOK, Plaintiff-Appellant,**

v.

**Don SOLTMAN, Defendant-Respondent.**

**No. 11323.**

Supreme Court of Idaho.

July 18, 1974.

Rehearing Denied Sept. 6, 1974.

Alvin Denman, Idaho Falls, Dale D. Billips, Los Angeles, Cal., for plaintiff-appellant.

Jerry V. Smith, Lewiston, for defendant-respondent.

McQUADE, Justice.

This appeal involves a claim of malpractice by the plaintiff-appellant, Leroy Cook, against the defendant-respondent, Dr. Don Soltman. On June 22, 1962, Cook was involved in an accident in which a portion of a tree limb penetrated his back. Cook obtained the medical services of Dr. Soltman for treatment and removal of the limb. After the operation, Cook alleges he continued to have back pains and was unable to work. Cook also claims that although

he sought professional diagnosis of the pain and suffering from time to time, it was not until April 19, 1972, that he learned that the cause of the pain was that portions of the tree limb and shirt had not been removed from his back.

On September 28, 1972, Cook filed an action in district court against Dr. Soltman alleging that he negligently failed to remove all of the tree limb and shirt from his back. The respondent moved to dismiss the complaint. Memoranda of authorities were submitted to the court by both parties. The district court ordered that the action be dismissed on February 27, 1973, stating,

"[I]t appearing that the claim against defendant physician [respondent] is not based upon a foreign object having been placed and left in plaintiff [appellant] by defendant physician, nor one of misdiagnosis by defendant physician, nor fraudulent concealment by the defendant physician, the same is therefore barred by the provisions of Idaho Code 5–214 [219] the applicable statute of limitations."

Cook has appealed to this Court.

The initial assignment of error by Cook is that the district court erred in holding that his complaint was barred by the statute of limitations because the defense was not properly presented. Cook contends that I.R.C.P. 8(c) requires the statute of limitations defense to be specifically pleaded, and argues that since Dr. Soltman moved to dismiss the complaint for failure to state a claim upon which relief could be granted and then submitted memoranda on the statute of limitations, the defense was waived.

Cook acknowledged during the oral argument of this appeal that he did answer Dr. Soltman's memoranda asserting the statute of limitations defense by submitting memoranda arguing that the limitation was

not applicable, and therefore Cook had notice of the defense and an opportunity to respond. Based upon the memoranda submitted to it, the district court ordered that Cook's complaint be dismissed. [1]

■ The procedure followed by the district court was in accordance with I.R.C.P. 12(b)(7) which provides,

"[I]f, in an action in district court, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by rule 56." (Emphasis added)

The facts in this action clearly fall within the above procedure. Dr. Soltman filed a motion to dismiss for failure to state a claim upon which relief could be granted and then filed matters outside the pleading, *i. e.*, memoranda alleging that the statute of limitations barred Cook's claim. Cook was given an opportunity to respond to the statute of limitations defense and answering memoranda were submitted. After the statute of limitations defense was fully argued before the district court, it ordered that Cook's complaint be dismissed. The procedure of treating a Rule 12(b)(6) motion accompanied by materials outside of the pleadings as a motion for summary judgment was described in the case of Stewart v. Arrington Construction Company,[2]

"When a 12(b)(6) motion is made, supported by affidavits and other materials which the court chooses to consider, the motion is then properly treated as one for summary judgment. I.R.C.P. 12(b) and 56; Rush v. G-K Machinery Co., 84

1. Order of the district court: [the parties having submitted memorandums [sic] of authorities and having argued said motion, and the court being fully advised  *  *  *."

2. 92 Idaho 526, 446 P.2d 895 (1968); *see also*: Izquierdo v. Cities Service Oil Co., 244 F.Supp. 758 (S.D.N.Y., 1965); 2 A. Moore, Federal Practice § 12.10 (1972).

Idaho 10, 367 P.2d 280 (1961). The use and effect of the summary judgment procedure is much like that of the pretrial conference. It helps to separate the real issues and facts from the spurious ones; to eliminate the chaff from the wheat. If the claims or defenses are all chaff, they are eliminated completely." [3]

Although the district court did not state that it was treating the respondent's motion as a motion for summary judgment, it is clear that is what occurred from the procedure followed by the district court. The statute of limitations defense was properly presented to the district court for disposition and is properly before this Court on appeal.

■ The statute of limitations as it applies to malpractice actions [4] was amended on July 1, 1971, and the question arises as to the applicable statute in this action in which the alleged malpractice occurred on June 22, 1962, and the action was filed on September 28, 1972. Both statutory provisions state that the two year limitation commences to run from the date of the wrongful act making the statute that was in force before the amendment applicable unless the new statute is retroactive. It has been repeatedly held that no law in this state is to be applied retroactively absent a clear legislative intent to the contrary.[5] Since there is no expressed intent by the legislature to make the 1971 amendment retroactive, the statute as stated prior to the amendment applies to this case.

This action comes to this Court on a judgment of dismissal based on Dr. Soltman's motion for summary judgment. The motion for summary judgment was based on the following statute of limitations,

"Within two years * * *.

"4. An action to recover damages for an injury to the person, or for the death of one caused by the wrongful act or neglect of another." [6]

Since this action was not commenced until more than ten years after the alleged wrongful act, this limitation appears to clearly apply to this action.

The procedure to overcome a motion for summary judgment based on the statute of limitations was set forth in the case of Johnson v. Gorton.[7] In that case it was held that the plaintiff had failed to submit sufficient materials in opposition to the motion for summary judgment to avoid dismissal. This Court stated the test for measuring the sufficiency of the materials to overcome the motion for summary judgment as,

"Summary judgment is proper if the evidence before the court on the motion would warrant a directed verdict if the case were to go to trial. When the moving party presents materials which would entitle him to a directed verdict if presented at trial, the responding party may not hold back his evidence; he must present sufficient materials to establish a triable issue. Those materials must set forth the facts with particularity; for if general averments were sufficient the summary judgment procedure would lose its utility. The requirement of specificity is underscored in cases where the moving defendant has established, prima facie, a defense grounded on the statute of limitations." [8]

■ To overcome Dr. Soltman's motion for summary judgment, Cook argues that his action falls within the discovery exception to the statute of limitations announced in Billings v. Sisters of Mercy of Idaho.[9] In that case a physician left a sponge in a patient's body that was not discovered until

---

3. 92 Idaho, at 531, 446 P.2d, at 900.

4. I.C. § 5–219.

5. Edwards v. Walker, 95 Idaho 289, 507 P.2d 486 (1973); Kent v. Idaho Public Utilities Commission, 93 Idaho 618, 469 P.2d 745 (1970); Utility Light & Power Co. v. City of Burley, 92 Idaho 499, 445 P.2d 720 (1968).

6. I.C. § 5–219(4), (prior to 1971 amendment).

7. 94 Idaho 595, 495 P.2d 1 (1972).

8. *Id.*, at 598, 495 P.2d, at 4.

9. 86 Idaho 485, 389 P.2d 224 (1964).

fourteen years after the operation. It was held that,

> "[W]here a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body." [10]

To overcome the statute of limitations bar raised by Dr. Soltman's motion for summary judgment, Cook was required to present sufficient materials to bring him within the discovery exception.

■ The record establishes that this action is not sufficiently similar to the *Billings* case to make the discovery exception applicable. The *Billings* case is limited on its facts to a situation in which a doctor places a foreign object in a patient's body without the patient's knowledge and fails to remove it. In the case at bar, Cook came to Dr. Soltman for treatment with the limb and shirt already embedded in his back, and Cook knew that the limb and shirt had penetrated into his back. The gravamen of Cook's complaint is that Dr. Soltman failed to properly cleanse his wound which resulted in a portion of the limb and shirt remaining in his body. It was pointed out in the *Billings* case that the purposes of the statute of limitations of prevention of fraudulent and stale claims arising after great lapses of time was not served by barring foreign object actions.

> "First of all, the existence of a sponge, or gauze, or pin in the body of a plaintiff negatives fraud. Secondly we do not often encounter a plaintiff who is guilty of 'sitting on his rights.' If one is unaware that he has any rights, it cannot be said that he is 'sitting' on them." [11]

Cook had notice that the tree limb and shirt were in his back. Moreover Cook alleges in his complaint that the wound never healed properly and continuously caused him pain. This allegation reveals that he had notice that the wound had not fully responded to the treatment. The complaint does not disclose whether Cook returned to Dr. Soltman for further treatment or whether he sought out other physicians. Irrespective of these options, Cook alleges that he was aware that his wound was not responding satisfactorily to Dr. Soltman's original treatment. This knowledge required Cook to be prompt and diligent in avoiding a further deterioration of his condition which he failed to do. Since Cook's action does not fall within the discovery exception, it is barred by the statute of limitations.

Judgment affirmed. Costs to respondent.

McFADDEN, J., and COGSWELL, District Judge, concur.

BAKES, Justice, dissenting, with whom DONALDSON, Justice, concurs:

It is difficult to understand the approach which the majority have taken in view of the prior decisions of this Court. A brief review of those cases will point out the problem.

The first case considered by this Court involving the statute of limitations for medical malpractice was Trimming v. Howard, 52 Idaho 412, 16 P.2d 661 (1932). In *Trimming*, the complaint alleged that a physician had left a part of a hypodermic needle in plaintiff's body and, after failing to recover it in subsequent surgery, falsely reassured plaintiff that the needle had been removed. The Court held that the statute of limitations was tolled only where fraud, rather than negligence was the substance of the cause of action. The Court then held that actions for medical malpractice were negligence actions, not fraud or breach of contract actions, and thus the two year statute of limitations commenced from the act, not the discovery.

---

10. *Id.*, at 497–498, 389 P.2d, at 232.

11. *Id.*, at 496, 389 P.2d, at 231.

Next was the case of Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964). In *Billings*, plaintiff was operated upon in 1946. Following the operation, plaintiff began to suffer considerable pain. After consulting numerous physicians to determine the cause of her pain, in 1961 a doctor in Oakland, California, performed an exploratory operation during which he discovered a gauze sponge in the area where surgery had been performed in 1946. Plaintiff brought her action in 1962. In holding that the statute of limitations did not bar plaintiff's action, the Court held that where a foreign object is negligently left in a patient's body by a surgeon, and the patient is ignorant of the fact and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body. The *Billings* case introduced the "discovery" rule into Idaho medical malpractice jurisprudence.

In 1970, the Court decided the case of Renner v. Edwards, 93 Idaho 836, 475 P.2d 530 (1970). In *Renner*, the plaintiff consulted the defendant doctor who diagnosed her ailment as a "gastrointestinal condition pathology" necessitating a colostomy. After the surgery the plaintiff continued to suffer distress and was unable to control her normal bodily functions. Three years after the surgery plaintiff consulted another doctor who performed additional surgery. As a result of that surgery it was discovered for the first time that Dr. Edwards' initial diagnosis was erroneous and that the colostomy was unnecessary. Since subsequent cases have variously interpreted the holding in *Renner*, it is important to analyze the *Renner* case carefully to determine exactly what was held in that case. The opening sentence in that opinion presented the issue as follows:

"This case presents for decision a single question, to-wit: in an action for medical malpractice involving an alleged mis-

diagnosis, should this Court adopt the 'discovery rule' previously adopted by this Court in medical malpractice actions involving the negligent leaving of a foreign object in a patient's body during surgery? The 'discovery rule' sets forth that the cause of action in such case[s] does not accrue until the patient learns, or in the exercise of reasonable care and diligence should have learned, of the negligence." 93 Idaho at 836, 475 P.2d at 530.

*Renner* extended the *Billings* discovery rule to include negligent misdiagnosis, employing the following language:

"We are, as herein stated, faced with the problem of the application of the 'discovery rule' to medical malpractice cases falling into categories other than foreign object cases. We believe the theories and reasons enunciated in *Billings* for the adoption of the 'discovery rule' are equally applicable to the case at bar. (Citations omitted).

"We conclude that the statute does not begin to run until the plaintiff knew or should have known of the defendant's *negligence.*" (Emphasis added). 93 Idaho at 838, 475 P.2d at 532.

Within two years of the *Renner* decision the Court employed language which cast into doubt the previously quoted language from that decision. In Johnson v. Gorton, 94 Idaho 595, 495 P.2d 1 (1972), the plaintiff consulted the defendant doctor for treatment of a gunshot wound. Both plaintiff and defendant were aware that plaintiff's injury was caused by a bullet. The Court held that summary judgment was properly entered against the plaintiff because of her failure to allege sufficient facts to establish a triable issue regarding "fraudulent concealment." The Court first observed that the bullet in the Johnson v. Gorton case was not a "foreign object" within the *Billings* sense because the doctor had not inserted the object but had merely failed to remove it in the course of

treatment. The Court then went on to comment:

"However, the specific holding in *Renner* on negligent misdiagnosis with resultant mistreatment cannot be applied directly. Because the present plaintiff's injury consisted of an open gunshot wound of which both she and the defendant were aware, *no diagnosis in the usual sense of the term was required. Rather, the defendant's services consisted simply of treatment.* Moreover, the plaintiff has based her action not solely on negligent treatment, but also on defendant's alleged failure to disclose fully the treatment she received. Therefore, the relevance of *Renner* is not its language on misdiagnosis but its concurrent destruction of the *Trimming* rule, that negligent treatment followed by fraudulent concealment does not come within the discovery rule unless fraud as opposed to malpractice is the gravamen of the action. Fraudulent concealment after *Renner* does toll the statute of limitations in a malpractice action until the plaintiff discovers or should have discovered the injury resulting from negligent treatment." (Emphasis added). 94 Idaho at 597, 495 P.2d at 3.

The Court then further went on to state:

"In this case summary judgment based on the statute of limitations must be affirmed if the record before the district court failed to disclose a genuine issue of fraudulent concealment tolling the statute until discovery." 94 Idaho at 598, 495 P.2d at 4.

The Court again stated at the end of the opinion:

"The district court framed the issue as a narrow question of law: whether or not the *Billings* 'foreign object' rule applied. Our discussion has broadened the question of law to encompass fraudulent concealment. Summary judgment is upheld because plaintiff failed to establish a triable issue of material fact respecting fraudulent concealment." 94 Idaho at 598–599, 495 P.2d at 5.

Johnson v. Gorton has thus done one of two things to the *Renner* discovery rule. It has either restricted the rule to those cases where the doctor fraudulently conceals from the patient his negligent conduct, or it has created a distinction between negligent misdiagnosis and negligent treatment. If it is the latter, then in a "misdiagnosis" situation the *Renner* discovery rule would still apply. But, where there was merly negligent mistreatment as distinguished from negligent misdiagnosis it would not, and the patient would have to prove fraudulent concealment.

The last two cases decided by this Court have not done much to clarify this confusion.[1] In the recent case of Johnson v. Stoddard and Brunt, 96 Idaho 230, 526 P. 2d 835 (1974), (petition for rehearing granted on April 29, 1974), hereinafter referred to as the *Brunt* case, the plaintiff-appellant was bucked off a horse and suffered a large hematoma on the right side of his lower back. He consulted Dr. Stoddard who inserted two penrose drains in the hematoma. When Dr. Stoddard examined Johnson a week later and removed the bandages, he failed to find the penrose drains. Johnson's back failed to heal properly and two lumps subsequently developed in his lower back. The plaintiff Johnson consulted Dr. Brunt and allegedly told Dr. Brunt about the disappearance of the penrose drains, although Dr. Brunt in his affidavits denied this. Dr. Brunt surgically removed the two lumps which had developed in plaintiff Johnson's lower back and installed two new penrose drains which he subsequently removed. He did not discover the two penrose drains which Dr. Stoddard had inserted. Plaintiff Johnson's back continued to cause pain, and several years later he consulted a doctor in Montana who, while excising a sinus in Johnson's back in the area of the original hematoma, discovered

1. A third case, Arnold v. Woolley, 95 Idaho 604, 514 P.2d 599 (1973), is not applicable since it involved an interpretation of I.C. § 5–243.

the two penrose drainage tubes originally installed by Dr. Stoddard. Johnson sued Dr. Stoddard for failure to remove the penrose drains which he had originally placed in Johnson's back, based on the "foreign objects" *Billings* rule, and also sued Dr. Brunt for negligently failing to diagnose the presence of the missing drains and to remove them, on the *Renner* "discovery" theory. The trial court granted summary judgment in favor of Dr. Brunt on the theory that the statute of limitations had run. This Court, in holding that the statute of limitations did not begin to run against Dr. Brunt until the plaintiff Johnson discovered or . should have discovered that the two missing penrose drains were still in his back, based its decision on *Renner* and stated:

> "In *Renner* we held that in medical malpractice actions involving misdiagnosis the statute of limitations does not begin to run until the plaintiff knew or reasonably should have known of the defendant's negligence."

It is interesting to note that the Court did not interpret the language employed in Johnson v. Gorton, *supra*, to indicate that the *Renner* decision had been limited to situations where there was "fraudulent concealment" of the doctor's negligence. The Court commented about the decision in Johnson v. Gorton, *supra*, and stated:

> "*Johnson* turned on fraudulent concealment. The precise holding therein was that summary judgment was properly entered against the plaintiff because of her failure to allege sufficient facts to establish a triable issue regarding fraudulent concealment. It is clearly stated in *Johnson* that its facts did not bring the case within either the *Billings* foreign object rule or the *Renner* misdiagnosis rule. Hence, *Johnson* is inapplicable to the case at bar."

The problem with the foregoing analysis of Johnson v. Gorton in the *Brunt* case is that it gives us no help in deciding when the "fraudulent concealment" rule of Johnson v. Gorton is applicable, or when the "negli-gent misdiagnosis" rule of *Renner* is applicable. The Court in *Brunt* certainly did not consider the Johnson v. Gorton case as limiting the *Renner* rule, in view of its action in reversing the summary judgment for the defendant in that case, and in view of the statement of the Court that *"Renner* is alive and well insofar as it pertains to cases arising prior to March 24, 1971."

This brings us to the facts of the present case. Here the patient Cook came in to the defendant doctor with an injury consisting of a tree limb which had become imbedded in his back. The doctor treated the patient but failed to remove a portion of the limb and shirt which were deeply imbedded in the back. The plaintiff in his complaint alleged that he did not know that the doctor had left a portion of the tree limb and shirt in his back, and did not find it out until he was treated by other physicians who located these foreign objects in his body. Without stating whether or not the Johnson v. Gorton rule is applicable and that the plaintiff must prove "fraudulent concealment" of the negligence, or the *Renner-Brunt* rule that "the statute of limitations does not begin to run until the plaintiff knew or reasonably should have known of the defendant's negligence," the majority of the Court in this case say:

> "Cook had notice that the tree limb and shirt were in his back. Moreover Cook alleges in his complaint that the wound never healed properly and continuously caused him pain. This allegation reveals that he had notice that the wound had not fully responded to the treatment. The complaint does not disclose whether Cook returned to Dr. Soltman for further treatment or whether he sought out other physicians. Irrespective of these options, Cook alleges that he was aware that his wound was not responding satisfactorily to Dr. Soltman's original treatment. This knowledge required Cook to be prompt and diligent in avoiding a further deterioration of his condition which he failed to do. Since Cook's action does not fall within the discovery excep-

tion, it is barred by the statute of limitations."

It must be remembered that this case was decided by the trial court based upon the defendant's motion to dismiss the plaintiff's complaint, which the trial court granted, and which this Court has treated as a motion for summary judgment because of the memoranda of authorities submitted by both parties. However, there were no affidavits filed, and the sole allegations upon which this Court acts are those contained in the plaintiff's complaint. If the mere allegation in plaintiff's complaint that he was having continual trouble with his wound ever since the original treatment is sufficient to conclude as a matter of law that he reasonably should have known that the failure to heal was caused by the defendant's alleged negligent failure to remove all of the tree limb and shirt from his back, as the majority have said, then both the *Billings* and *Renner* cases were improperly decided, because in both of those cases the plaintiffs stated that they continued to have trouble with their wounds after the original treatment, and it was only when they consulted other doctors years later that they discovered the reasons for the continuing problems with the original wound. The majority's handling of *Renner*, *Brunt*, and *Gorton* only enhances the confusion in this area of the law where we appear to be splitting hairs between negligent diagnosis and negligent treatment. It seems to me that all of the policy reasons which this Court set out at great length in *Renner* for holding that the statute of limitations does not begin to run against a patient until he knows or has reasonable cause to believe that a doctor has been negligent, are equally applicable to the facts in *Gorton, Brunt* and this case. To try to distinguish between diagnosis and treatment seems to me to be a distinction without a difference, because every case of treatment requires a prior diagnosis, and every diagnosis usually results in some sort of treatment. Looking at the problem from the patient's point of view, as we did in *Renner* until the patient knows or has reasonable cause to believe that the doctor has been negligent, he cannot file a complaint against the doctor because he has no reason to complain. I can see no difference whether the matter is a sponge left in the patient by the doctor, or a part of a tree limb and a shirt which the doctor may not have put there but negligently left there, or a negligent misdiagnosis of the patient's illness, or a negligent mistreatment. Therefore, we either ought to apply the *Renner* rule to all malpractice actions, or we ought to reverse the *Renner* decision entirely as it appears that the legislature has done by the 1971 amendment to I.C. § 5–219. But to try to distinguish between cases on the basis of whether it involves a misdiagnosis or mistreatment can only plunge us deeper into this medical malpractice quagmire.

To be consistent, I would vote to follow the rule of the *Renner* case as it applies to cases arising prior to the 1971 amendment. Therefore, the judgment of the trial court should be reversed and the plaintiff permitted to try to prove the allegations in his complaint.