543 P.2d 1163

STATE of Idaho, acting By and Through the STATE DEP'T OF AGRICULTURE, et al., Plaintiffs,

v.

MILLERS NATIONAL INSURANCE COMPANY, a corporation, Defendant.

MILLERS NATIONAL INSURANCE COMPANY, a corporation, Third-Party Plaintiff-Appellant,

v.

Richard E. CRIPPEN et al., Third-Party Defendants-Respondents.

No. 11820.

Supreme Court of Idaho.

Dec. 24, 1975.

324

Edward L. Benoit of Benoit, Alexander & Harwood, Twin Falls, for appellant.

William A. Parsons, of Parsons, Smith & Pedersen, Lawrence H. Duffin, of Duffin, Coughlan & Workman, Burley, for respondents.

McFADDEN, Justice.

The State of Idaho instituted this action against appellant Millers National Insurance Company, a corporation, to enforce payment under a bond issued by that corporation on behalf of Minidoka Seed Company, Inc. In its complaint the state alleged the bond was issued pursuant to the provisions of Title 69 Chapter 2, Idaho Code in order that the Minidoka Seed Company, Inc., could qualify as a bonded warehouse. The state further alleged that Minidoka Seed Company, Inc. was authorized to do business as a bonded warehouse pursuant to statute until October, 1973, when the state, by removing its license, closed the warehouse because of alleged shortages in deposited seed and grain. The complaint also alleged that a portion of the shortages were from the 1970 crop placed in storage at the time the bond was in the amount of $29,000, and a portion of the shortages was the 1971 crop placed in storage when the bond was in the amount of $15,000. The complaint alleged that appellant was indebted to the depositors of the bankrupt Minidoka Seed Company, Inc., for the total amount of $44,000. The state sought judgment for the bond amount against appellant for the purpose of distributing the sums prorata among the various named depositors of seed and grains.

In its third-party complaint, appellant Millers National Insurance Company alleged the filing of the action by the state against appellant; that any loss suffered by the state or by any depositor of goods with the Minidoka Seed Company "was the proximate result of the conversion, wilfull, malicious or otherwise, of third-party defendants." The complaint also stated that in their application for a grain warehouse bond, the third-party defendants Crippen,

Hillis and Ward personally agreed to indemnify and hold harmless appellant from any damages, losses, etc., of every kind, including counsel and attorney fees, which the appellant might sustain by reason of having executed the bond referred to in the state's complaint; that if the appellant is liable to the state or any particular claimant under the bond, then the third-party defendants are liable to appellant for indemnity, contribution or subrogation. Appellant then prayed for judgment against respondents for all sums that appellant may have to pay, including costs, and attorneys fees.

■ Respondents moved to dismiss the third-party complaint on the grounds that it failed to state a claim upon which relief could be granted (I.R.C.P. 12(b)(6)). An affidavit by respondent Ward accompanied the motion to dismiss, and appellant filed an affidavit in opposition to the motions to dismiss. The trial court granted the motions and dismissed the third-party complaint, and this appeal followed. Inasmuch as affidavits were submitted for and against the motions to dismiss, the court will treat the respondents' motions as motions for summary judgment and the district court's order as one granting summary judgment. I.R.C.P. 12(b) and 56. *Cook v. Soltman,* 96 Idaho 187, 525 P.2d 969 (1974).

From the record the following facts appear: in August 1964, the Minidoka Seed Company, Inc., in order to obtain a license from the State to operate a bonded warehouse, submitted its application for a warehouseman's bond as required by I.C. § 69–208. The application was for a bond in the amount of $29,500.[1]

The application form for the bond included a "Special Indemnity Agreement" on the second page, following the space for execution of the application. This "Special Indemnity Agreement" provided:

"In consideration of the Company executing or procuring the execution of the bond herein applied for, we jointly and severally join in the aforegoing indemnity agreement; * * *."

This "Special Indemnity Agreement" was executed by respondents Crippen, Hillis and Ward, who were listed on the application as the president, vice-president and secretary-treasurer respectively of Minidoka Seed Co., Inc.

On the basis of the application, appellant issued its Warehouseman's Bond No. 444–34–89 pursuant to Title 69 Chapter 2, Idaho Code. This bond in the amount of $29,500 was for the period September 1, 1964 to August 31, 1965. It was executed by Minidoka Seed Company, Inc., as principal, with appellant as surety.

1. Among other things the application provided:
"In consideration of the Company [the appellant] executing or procuring the execution of the bond or bonds herein applied for (including every continuation, renewal, substitute or new bond), the undersigned do(es) hereby jointly and severally covenant with the Company * * * as follows:
"First: To Pay to the Company all premium charges due or to become due on said bond * * *.
"Second: To indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all damages * * * including counsel and attorneys' fees, which the Company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond herein applied for, or by reason or in con-sequence of the execution by the Company of any and all other bonds at any time heretofore or hereafter executed for or at the instance or request of the undersigned; * * *
" * * *
"Seventh: That these covenants and also all collateral security, if any, at any time deposited with the Company concerning the said bond or any other former or subsequent bonds executed for or at the instance or request of the undersigned shall, at the option of the Company, be available in its behalf and for its benefit as well concerning the bond or undertaking hereby applied for, as also concerning all other former or subsequent bonds and undertakings executed as aforesaid.
" * * * ."

At the time of issuance of the first bond, I.C. § 69–207 provided that a warehouseman's license was issued for a period not to exceed one year, ending on August 31 of each year. In 1965 this statute was amended (S.L.1965, Ch. 171, sec. 2), to provide that the license period shall be prescribed by regulation of the Department of Agriculture.

On August 20, 1965, appellant issued another bond, No. 444–34–89A in the face amount of $24,000, for a period from September 1, 1965, and ending August 31, 1966. This bond also was executed by Minidoka Seed Company, Inc., as principal and appellant as surety. It also stated:

"*This bond shall be deemed continuous in form and shall remain in full force and effect, and shall run concurrently with the yearly period above specified and each and every succeeding yearly period or periods for which said principal may be so licensed, unless and until terminated or cancelled in the manner hereinafter provided.*" [Emphasis in original.]

On October 20, 1966, Rider No. 1, executed by both appellant and Minidoka Seed Company, Inc., was affixed to Bond No. 444–34–89A, changing the face of the bond from $24,000 to $29,000. This rider was effective September 1, 1966. On September 8, 1971, Rider No. 2, also executed by both appellant and Minidoka Seed Co., Inc., was affixed to the same bond, changing its face amount from $29,000 to $15,000, effective September 1, 1971. After September 1, 1966, certificates of bond continuation were issued annually by appellant as continuations of Bond No. 444–34–89A.

While it is appellant's position that the respondents are liable for indemnification under the provisions of the application for bond, the respondents contend that because the bond sued upon (444–34–89A) did not provide for indemnification of appellant, they are under no obligation to it. Respondents contend that they entered into two distinct contracts for two separate bonds, i. e., that the application was only for the first bond (444–34–89) and did not carry over to the subsequent bonds. Respondents also urge that any other construction would place them under a liability without limit as to time.

However, respondents made only one application for the bond. This application, terms of which are set out *supra* n. 1, provided in its introductory clause that

"[i]n consideration of the Company executing or procuring the execution of the bond or bonds herein applied for (*including every continuation, renewal, substitute or new bond*) * * *." (Emphasis added.)

Paragraph 7 of the application also makes reference to former or subsequent bonds issued. It is clear from paragraph 2 that Minidoka Seed Company, Inc., agreed to indemnify the appellant for any losses sustained by reason of issuance of the bond (which, when read with the intoductory clause, has reference to subsequent bonds and renewals). Each of the individual respondents executed the "Special Indemnity Agreement", wherein they agreed to "jointly and severally join in the foregoing indemnity agreement."

Under these facts, it is the conclusion of the court that the indemnity agreement contained in the single application for bond covered not only the initial bond applied for, but also the subsequent bond, (444–34–89A) and annual continuations thereof and that the respondents are bound thereby. *Luke v. American Surety Co. of N. Y.,* 189 Okl. 220, 114 P.2d 950 (1941). See 42 C.J.S. Indemnity § 8 p. 574 (1944). *See also, Jones v. Strom Const. Co., Inc.,* 84 Wash.2d 518, 527 P.2d 1115 (1974).

Respondents have also urged that the agreement was ambiguous and it should be construed strictly against appellant. Examination of the language employed in the application and indemnity agreement does not disclose such to be the case. Respondents also contend that the doctrine of reasonable expectations as dis-

cussed in *Corgatelli v. Globe Life & Accident Ins. Co.*, 96 Idaho 616, 533 P.2d 737 (1975), should be applied. However, we find such doctrine inapposite to the facts of this case.

 Respondents also urge that the statute of limitations has run on their liability, arguing that the special indemnity agreement was executed in August 1964, and under the provisions of I.C. § 5–216 (five-year statute on written contracts), the time for bringing suit elapsed by August 1969. However, we do not agree with that contention, for an action on an indemnity agreement does not accrue until the indemnitor suffers damage or loss. *B & G Electric Co. v. G. E. Bass & Co.*, 252 F.2d 698 (5th Cir. 1958); *City of Richmond v. Branch*, 205 Va. 424, 137 S.E.2d 882 (1964); *755 Seventh Ave. Corp. v. Carroll*, 266 N.Y. 157, 194 N.E. 69 (1935); 41 Am. Jur.2d Indemnity § 29, p. 720 (1968). It is clear that this statute of limitations had not run on appellant's claim.

 Respondents also contend that the indemnity agreement was modified by the "riders" and thus they were discharged from their liability. Respondents argue by analogy that they should be treated as gratuitous sureties, i. e., they received no compensation, but agreed to the "Special Indemnity Agreement" as an accomodation. It will be recalled that one of the two "riders" was effective September 1, 1966, changing the face amount of the bond from $24,000 to $29,000, and the other was effective September 1, 1971, reducing the liability from $29,000 to $15,000. Neither of the "riders" increased the liability above that set out in the application executed by the respondents. Whether respondents were "gratuitous sureties" is an unresolved factual issue. Thus, summary judgment is inappropriate in such circumstances. I.R.C.P. 56(c).

It is the conclusion of this court that the trial court erred in dismissing the third-party complaint. The judgment of dismis-

sal is reversed and cause remanded. Costs to appellant.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.