514 P.2d 599

**Orson W. ARNOLD, Plaintiff-Appellant,**

v.

**Hoyt B. WOOLLEY, Defendant-Respondent.**

**No. 11072.**

Supreme Court of Idaho.

Sept. 24, 1973.

———◆———

Bowen & Bowen, Idaho Falls, for plaintiff-appellant.

Moffatt, Thomas, Barrett & Blanton, Boise, Hansen & Hopkins, Idaho Falls, for defendant-respondent.

BAKES, Justice.

On March 11, 1971, plaintiff-appellant Orson W. Arnold of Idaho Falls, Idaho, filed a complaint against defendant-respondent Dr. Hoyt B. Woolley (deceased since June 24, 1972), alleging that on or about September 1, 1944, Dr. Woolley prescribed and gave appellant X-ray treatments for two bruised thumbs, which the deposition of appellant indicates became infected with

a fungus. At the time appellant owned a restaurant and his duties included washing dishes. Appellant alleged that respondent doctor and his office staff gave biweekly X-ray treatments for a two year period (1944–1946), that allegedly resulted in the amputation of the fingers of the right hand as a result of radiodermatitis caused by X-ray burns. In his complaint and deposition, appellant alleged that one year prior to March 11, 1971, was the first time he had known of or became aware that he was suffering from radiodermatitis.

In a deposition taken on June 2, 1971, the respondent doctor stated that he had no records dating back to 1944–1946, and that he could not remember ever having treated appellant for any malady whatsoever.

Defendant-respondent made a motion for summary judgment on grounds that there is no genuine issue as to material fact and that the claim was barred by the statute of limitations. Respondent's motion for summary judgment was supported by the affidavit of an Idaho Falls doctor, Mark Baum, M.D., who stated he had treated appellant on various occasions between 1965 and 1968 and informed appellant in August, 1965, that he had permanent X-ray radiation damage. In an affidavit dated September 22, 1971, plaintiff-appellant acknowledged that he had been treated by Dr. Baum for other matters; however, appellant denied that he had ever been advised that X-ray radiation was the cause of his hand problem.

On January 19, 1972, the district court granted respondent's motion for summary judgment and dismissed the case on the grounds that the statute of limitations had run and that appellant knew or "should have known of the alleged negligence he complains of twenty-five years later."

The record before the trial court on hearing on motion for summary judgment consisted of, among other things, the deposition of the appellant which discloses that after concluding the X-ray treatments with respondent in 1946, that in the next two years he was treated by numerous other doctors for the fungus condition and ulcers which broke out on his fingers. This included treatment in 1947 at the Mayo Clinic in Rochester, Minnesota, where he had one of his fingers amputated because of the condition. The record is vague regarding any problem relating to appellant's hands from the period 1947 through early 1970, except the affidavit of Dr. Mark Baum, M.D., referred to above. Appellant in his deposition stated that in the early part of 1970 his hands started to become inflamed and the skin began to crack and bleed. In March of 1970 he stated that he consulted Dr. Morginson in Salt Lake City who, he alleged, diagnosed the condition as radiodermatitis caused from excessive X-ray treatment. Appellant testified that this was the first time that any doctor had advised him of this condition and the reason for it.

At the time that appellant concluded his treatment with respondent doctor in 1946 as he alleges, the applicable statute of limitations was I.C. § 5–219, which provided:

"5–219. *Actions against officers, for penalties, on bonds, and for personal injuries.*—Within two years:

. . . . . .

"4. An action to recover damages for an injury to the person, or for the death of one caused by the wrongful act or neglect of another."

A reading of I.C. § 5–219 would indicate that appellant's cause of action lapsed in 1948, two years after respondent doctor completed the alleged X-ray treatments. However, appellant contends this Court's decisions in Renner v. Edwards, 93 Idaho 836, 475 P.2d 530 (1970), and Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964), are applicable, and that the statute does not begin to run until the appellant knew or should have known of respondent's negligence. Also, appellant alleges that I.C. § 5–243 dealing with "ionizing radiation injuries" is applicable. That section, enacted in 1967, reads as follows:

"5–243. *Limitation of action for ionizing radiation injuries.*—No action or proceeding may be brought to recover

for an ionizing radiation injury more than three (3) years after the person suffering such injury had knowledge or ought reasonably to have had knowledge of having suffered the injury and of the cause thereof, but in no event more than thirty (30) years from the date of the last occurrence to which the injury is attributed."

Although this Court has regularly held that acts of the legislature will not be given retroactive effect in the absence of clear intention expressed in the statute to that effect, Kent v. Idaho Public Utilities Commission, 93 Idaho 618, 469 P.2d 745 (1970); Unity Light & Power Co. v. City of Burley, 92 Idaho 499, 445 P.2d 720 (1968); Application of Forde L. Johnson Oil Co., 84 Idaho 288, 372 P.2d 135 (1962), this Court in Frisbie v. Sunshine Mining Company, 93 Idaho 169, 457 P.2d 408 (1969), in an analogous factual situation, ruled that where the occurrence happened before the effective date of the statute, but the injury or disability occurred afterwards, the statute was nevertheless applicable. In *Frisbie* the claimant worked from 1947 to 1954 as an underground miner for the Sunshine Mining Company. In 1954 Frisbie learned that he was suffering from grade three silicosis, whereupon he was transferred from the underground mine to the surface where he was employed as a boiler tender and watchman. In 1966, Frisbie became afflicted with a severe respiratory problem which was diagnosed as silicosis complicated by serious lung collapses and various other medical problems. Following this disability and his subsequent retirement in November, 1966, Frisbie received some disability payments pursuant to a group insurance policy at Sunshine Mining Company. After these benefits were exhausted Frisbie filed his claim for compensation with the Industrial Commission in 1967. The Commission denied Frisbie's claim for compensation on the ground that the statute in effect in 1954, I.C. § 72–1209, when Frisbie received his last injurious exposure to silica dust, provided for compensation only if disability followed within two years of the last injurious exposure. Notwithstanding Frisbie's argument that his injury was compensable under a 1965 amended version of I.C. § 72–1209, as it read at the time of his disability in 1966, which had deleted the two year limitation contained in the earlier version in effect in 1954, the Commission ruled that Frisbie's claim for compensation was governed by the law in effect at the time of the last injurious exposure and to apply the 1965 amended version of I.C. § 72–1209 would be to give the amendment retroactive effect.

Following Frisbie's appeal, this Court in a unanimous opinion held:

"A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; rather, a law is retroactive only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage. 2 Sutherland, Statutory Construction, § 2202, p. 117 (3d ed. 1943); 82 C.J.S. Statutes § 412, p. 980. *In cases such as the present, the right to compensation does not accrue and the rights of the parties do not become fixed until the occurrence of the event, in this case appellant's disability, which gives rise to a cause of action.* (Omitting citations). Consequently, application of the law in effect at the time the disability occurred to a claim arising from that disability does not involve a retroactive application of the law." 93 Idaho at 172, 457 P.2d at 411.

An analogous situation exists in the present case. At the date of Mr. Arnold's alleged exposure to X-ray treatment supposedly under Dr. Woolley's care, the controlling two year statute of limitations was I.C. § 5–219. In 1967 the legislature, by enacting I.C. § 5–243, recognized that damage and injury from exposure to ionizing radiation may not occur until long after the exposure. This view is reinforced by I.C. § 5–244 which reads as follows:

"5–244. *Latent injury—Effect of prior recovery.*—No action or proceeding to re-

cover for latent ionizing radiation damage shall be barred by recovery in any earlier action or proceeding, unless the plaintiff in the earlier action or proceeding shall actually have been awarded damages for the latent injury, or shall have known or reasonably have been expected to know that such latent damage would occur, and its nature and extent with sufficient particularity to establish entitlement to a specific amount of damages on account thereof."

The Legislature recognized that the immediate damage which an ionizing radiation injury can cause, and the latent damage of an ionizing radiation injury are such separate phenomena that two separate actions may be necessary to fully compensate a victim of such radiation exposure.[1] Thus, under § 5–244 a person can maintain an action for severe ionizing radiation burns at the time of exposure and still maintain another action for latent cancer which the radiation was proved to have caused twenty years later. While two separate remedies stemming from the same occurrence or series of occurrences are unique in the legal annals, it is nevertheless an effective way to insure that a remedy exists for a wrong committed. Although the exposure in this case occurred before the enactment of §§ 5–243 and 5–244, the latent damage occurred afterwards if you accept appellant's testimony, as we must in ruling on the propriety of the trial court's granting of the motion for summary judgment. De-

shazer v. Tompkins, 89 Idaho 347, 404 P.2d 604 (1965); Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960). Therefore, in our view, the decision of this Court in Frisbie v. Sunshine Mining Company, *supra*, is indistinguishable and I.C. §§ 5–243 and 5–244 are applicable to this case.[2] We are not deciding that the alleged X-ray treatment could result in an ionizing radiation injury as defined in I.C. § 5–243. However, X–rays would appear to be ionizing radiation,[3] although that is a factual issue. The granting of summary judgment below was improper because there were factual issues which must be resolved by the trier of fact. Summary judgment should only be granted when there is no genuine issue as to material facts and when the moving party is entitled to a judgment as a matter of law. Hansen v. Howard O. Miller, Inc., 93 Idaho 314, 460 P.2d 739 (1969); I.R.C. P. 56(c).

In view of our holding that §§ 5–243 and 5–244 are applicable, it is unnecessary to pass upon appellant's other contentions regarding the Renner v. Edwards, *supra*, and Billings v. Sisters of Mercy of Idaho, *supra*, decisions.

The summary judgment granted by the trial court is reversed and the cause remanded for trial. Costs to respondent.

DONALDSON, C. J., and SHEPARD, McQUADE and McFADDEN, JJ., concur.

1. Cf. City of Miami v. Brooks, 70 So.2d 306 (Fla.1954); Buck v. Mauradian, 100 So.2d 70 (Fla.App.1958).

2. The amendment to I.C. 5–219 in 1971 which refers to § 5–243 had an effective date of March 24, 1971, thirteen days after the plaintiff filed his complaint, and is therefore not applicable.

3. Under "Radiation," Dorland's Illustrated Medical Dictionary, 24th ed., p. 1264, (1965), states the following:
"Radiation— . . . ionizing radiation, high-energy radiation (X-rays and gamma rays) which interacts to produce ion pairs in matter."

See also 11 McGraw-Hill Encyclopedia of Science and Technology 234 (1971), indicating that X-rays are ionizing radiation.

Regarding the relationship between X-rays and radiodermatitis, (appellant alleges in his complaint he was suffering from radiodermatitis), Dorland's Illustrated Medical Dictionary defined "radiodermatitis" as follows:
"Radiodermatitis—a cutaneous reaction occurring as a result of exposure to excessive quantities of *ionizing radiation, such as* grenz rays, *roentgen* or gamma rays, neutrons, or alpha or beta particles." p. 1265. (Emphasis added).

X-rays are commonly referred to as roentgen rays. 14 McGraw-Hill Encyclopedia of Science and Technology 672 (1971).