735 P.2d 1014

**William R. DAVIS and Julia D. Davis, husband and wife, Plaintiffs-Appellants,**

v.

**Mark F. MORAN, M.D.; Bannock Regional Medical Center; Intermountain Cancer Clinic; and John Does I Through X, Defendants-Respondents.**

No. 16161.

Supreme Court of Idaho.

April 6, 1987.

Christen L. Schmutz, and Lowell N. Hawkes (argued), of Hawkes, Esplin & Burnham, Pocatello, for plaintiffs-appellants.

Richard C. Fields, and Kristi Emig-Mark (argued), of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-respondent Moran.

Gary T. Dance (argued), of Merrill & Merrill, Pocatello, for defendant-respondent Bannock Regional Medical Center.

DONALDSON, Chief Justice.

In February of 1982, plaintiff-appellant, Julia Davis, had a modified radical mastectomy of her left breast. She then underwent cancer radiation therapy at defendant-respondent, Intermountain Cancer Clinic (ICC), located at defendant-respondent, Bannock Regional Medical Center (BRMC), in Pocatello. This radiation therapy occurred between February 23, 1982 and April 7, 1982, and was given under the supervision of defendant-respondent, Dr. Mark F. Moran. During that treatment, Davis alleges that her spinal cord was either exposed to an excessive dose of radiation or otherwise irradiated from an overlap of the dual-beam radiation field. However, nothing evidenced the excessive spinal cord irradiation, and following the therapy Davis was able to perform normal daily activities. She had no pain or loss of function in her legs or lower back at that time.

In early 1983, Davis began to experience spasms in her left leg and pain in her feet. In April of 1983, she was hospitalized and underwent tests at BRMC. However, none of her doctors were able to determine the source or cause of her symptoms. In May of 1983, Davis spent an additional eight days being tested at the University of Utah Medical Center to determine the cause of her problems. At that time, the doctors feared that the cancer had spread to her spinal cord. In June of 1983, Davis received a letter from Dr. Richard Baringer, one of the doctors connected with Davis's testing at the University of Utah. He explained that he had a suspicion that Davis's difficulties were related to her prior radiation treatment, and that he had asked his staff to seek further information on this possibility with a focus upon the doses of radiation and the exact way in which they were administered. That inquiry initiated by Dr. Baringer eventually lead to the discovery of the overlapping radiation fields.

Dr. Frederic Gibbs, who also looked into Davis's prior radiation treatment to determine the cause of her spinal damage, explained that although excessive spinal cord irradiation may have occurred in 1982, it would have been impossible to detect at that time. Davis learned of Dr. Gibbs' findings when she met with the Utah doctors on August 25, 1983. Dr. Gibbs explained that the exact mechanism of injury is not understood. Detectable damage only follows after a period of time, related to genetics, when the body reaches the critical point where the blood supply becomes inadequate. This is often after several years. He stated that, "[t]he damage by the radiation is not clinically detectable by any means until the functional defect occurs."

A claim was filed on July 27, 1984. A prelitigation screening panel hearing was held, and its decision filed four months later. Suit was then filed on December 27, 1984. Defendants then moved for summary judgment on two bases: (1) that the Davises' action was barred by the statute of limitations, I.C. § 5–219(4); and (2) that the Davises' failure to timely file a Notice of Tort Claim barred their action as against BRMC and ICC. The district court granted summary judgment based on the running of the statute of limitations from which the Davises now appeal.

I

The first issue that we must address under the facts of this case is which statute of limitations applies. The statute relied upon by the district court was I.C. § 5–219(4) which governs actions for damages for malpractice.[1] Other statutes, I.C.

1. That statute reads as follows:

"5–219. Actions against officers, for penalties, on bonds, and for professional malpractice or for personal injuries.—Within two (2) years:

" . . .

"4. An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; provided, however, when the action is for dam-

§§ 5–242 through –244, more specifically govern limitations on actions based on injuries caused by ionizing radiation. The applicable time period is contained in I.C. § 5–243 which reads:

"**5–243. Limitation of action for ionizing radiation injuries.**—No action or proceeding may be brought to recover for an ionizing radiation injury more than three (3) years after the person suffering such injury had knowledge or ought reasonably to have had knowledge of having suffered the injury and of the cause thereof, but in no event more than thirty (30) years from the date of the last occurrence to which the injury is attributed."

However, I.C. § 5–242 reads:

"**5–242. Ionizing radiation injuries— Purpose of act.**—For purposes of this act, 'ionizing radiation' means any particulate or electromagnetic radiation capable of producing ions directly or indirectly in its passage through matter; provided, however, that the provisions hereof and of sections 5–243 and 5–244, Idaho Code, *shall not be deemed to apply to any action or proceeding to recover damages for professional malpractice,* as defined in section 5–219, Idaho Code." (Emphasis added.)

The language of the provision excepting professional malpractice actions was added to this section by amendment in 1976, following, and very likely in reaction to, our holding in the case of *Arnold v. Woolley,* 95 Idaho 604, 514 P.2d 599 (1973). In that case, we had interpreted I.C. §§ 5–242 through –244 to apply to a malpractice action against a doctor whose alleged negligent use of radiation therapy had caused injury to the plaintiff.

Appellants argue that the legislature's exclusion of professional malpractice actions from the broader statute of limitations contained in I.C. § 5–242 created two classes of persons who seek redress for injuries caused by ionizing radiation: plaintiffs who are so injured as a result of professional malpractice, and plaintiffs who are so injured in any other context. Because there is no rational basis for the legislature's disparate treatment of these two classes of persons, appellants contend, the 1976 amendment to I.C. § 5–242 is in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. We disagree.

█ The first step in an equal protection analysis is to identify whether the classification which is being challenged is inherently suspect, and the second step is to determine the standard under which the classification will be judicially reviewed. *Tarbox v. Idaho Tax Commission,* 107 Idaho 957, 695 P.2d 342 (1984). It is clear that there is neither an inherently suspect classification involved, nor a fundamental con-

---

ages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as o⁻ the time of the occurrence, act or omission cc mplained of, and the limitation period shall not be extended by reason of

any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer, and, provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term 'professional malpractice' as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. This subsection shall not affect the application of section 5–243, Idaho Code, except as to actions arising from professional malpractice. Neither shall this subsection be deemed or construed to amend, or repeal section 5–241, Idaho Code."

stitutional right, and thus, our analysis of the appellants' equal protection claim is governed by the lower level of review characterized as the rational basis test. For, as the United States Supreme Court has said, "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presumed constitutionality of the statutory discriminations and require only that the classification be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step, in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations...." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *see also, Lindsley v. National Carbonic Gas Company,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).[2]

It is important to note that the Idaho Legislature enacted I.C. §§ 5–242 through –244 in 1967 following the construction of the rather extensive nuclear energy research facilities in the desert between Arco and Idaho Falls. Although we were fully justified in applying the plain language of I.C. § 5–243 to medical malpractice cases in *Arnold,* the legislature was no doubt surprised by our holding and responded by amending the statute to exclude malpractice claims. Often, it is not until the legislature amends a statute several times before the legislature's original intent in

passing the statute becomes apparent. The 1976 amendment to I.C. § 5–242, which covers §§ 5–243 and –244 as well, made the legislature's initial intent quite clear, particularly as the amendment was adopted with an emergency clause and a provision that purported to apply it retroactively to all accrued claims. 1976 Idaho Sess. Laws, ch. 184, p. 670.

■ A rational basis does exist for the distinction between plaintiffs exposed to radiation in the professional malpractice context and those exposed to radiation in other types of situations, such as at a nuclear facility or where radioactive materials are manufactured. In the latter situations, it is possible that a person may be exposed to radiation without his knowledge or consent. That lack of knowledge may prevent him from being able to link possible physical injuries to the radiation for a long period of time. In the professional malpractice context, however, a patient or a patient's family must voluntarily consent to be treated with radiation therapy at a hospital or other health facility. In fact, as in this case, patients are usually required to sign a consent form evidencing their understanding of the risks. A person who specifically knows about the radiation can closely monitor himself for subsequent effects. Thus, it is reasonable to establish a shorter period of limitation for the claims of these persons; and the legislature's different treatment of these two groups with respect to the claims that they may assert, is based, therefore, upon a rational reason.

In addition, the legislature could well have believed that all professional malpractice plaintiffs should be treated the same with respect to the statute of limitations on

---

**2.** The four parts of traditional equal protection analysis for economic regulation which are analogously applicable to the present case are:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that

clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Id.* at 78–9, 31 S.Ct. at 340.

their claims, and not divided into two groups, *i.e.,* those with radiation injuries and those with other types of injuries. There are many similarities amongst professional malpractice claims that would justify treating them the same, for example the type of proof involved, the type of defendants and real party interests involved, and public policy considerations.

■■■ The legislature's program in ameliorating the problem of stale claims under its various statutes of limitations may not be ideal. However, as we have already noted, a classification having some reasonable basis does not offend against the equal protection clause merely because it is made without mathematical exactitude or because in practice it results in some inequality. If any state of facts reasonably can be conceived that would sustain the classification, the existence of that state of facts at the time the law was enacted must be assumed. *Lindsley, supra* at 78, 31 S.Ct. at 340. The party who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. *Id.* at 78–9, 31 S.Ct. at 340. As we have seen, the Davises have been unable to carry this burden of showing that the classification between plaintiffs with claims in a professional malpractice context and other plaintiffs who have been injured by ionizing radiation, is essentially arbitrary. Therefore, we hold that the Idaho Legislature did not violate the equal protection clause of the fourteenth amendment of the United States Constitution when it enacted the distinction between professional malpractice claimants and other claimants in I.C. § 5–242 with its amendment in 1976. The district court, therefore, correctly applied I.C. § 5–219 to the present action.

## II

The Davises next argue that if I.C. § 5–219(4) does apply, their cause of action did not accrue until Mrs. Davis knew that her injury was caused by the radiation treatment, and not at the time of the treatment itself. The Davises emphasize that since the gist of their malpractice action is negligence, in order to recover under a theory of negligence, a plaintiff must prove actual damage. This is quite true and we stated as much in *Blake v. Cruz,* 108 Idaho 253, 260, 698 P.2d 315, 322 (1985). "As a general rule 'the statute of limitations does not begin to run against negligence action until some damage has occurred.'" *Id.; Stephens v. Stearns,* 106 Idaho 249, 254, 678 P.2d 41, 46 (1984).

The Davises argue, however, that no provable damage occurred until after her doctors had discovered that the radiation treatment was a possible cause of Mrs. Davis's injuries. Indeed, we agree that Mrs. Davis would have had trouble *proving* that the cause of her ailment was due to the radiation until after her doctors were able to diagnose that there was a connection. However, the *Blake* and *Stephens* cases do not stand for the proposition that a negligence action cannot accrue until a plaintiff has acquired enough evidence to prove that his or her injury is linked to the defendant's alleged negligent act or omission. Rather, those cases merely reiterate the truism that there is no tort until there is an injury.

It is clear that I.C. § 5–219(4) deems that a cause of action shall have accrued as of the time of the occurrence, act or omission complained of. In most cases, the act or omission complained of and the injury to the plaintiff occur at the same time, particularly in the medical context. *See, e.g., Masi v. Seale,* 106 Idaho 561, 682 P.2d 102 (1984). However, where the functional defect (and its symptomology) does not occur at all until a later time, the very nature of a tort action requires us to read this language in I.C. § 5–219(4) flexibly to avoid absurd results. *See Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985) (cause of action against an accountant for negligent preparation of tax returns did not accrue unless and until the I.R.S. detected the error and assessed a penalty). However, we have consistently refused to create discovery exceptions in most circumstances or types of cases, in light of the legislature's explicit rejection of a discovery rule (with two exceptions not applicable to the

present case[3]) for professional malpractice actions. *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982).

There still remains, however, the problem of those injuries, resulting from radiation exposure, which are initiated at one point in time, but by their very nature do not become manifest or fully developed until a later point in time because the destruction of tissue or development of cancer occurs much later. Indeed, it can be said that the injury does not occur at the moment of radiation because, depending on the sensitivity of the person and many other factors, a given dose of radiation may or may not set into motion the chain of events which leads to the real injury some years later, *i.e.,* damage to the tissue either through loss of blood supply or cancer. The Idaho legislature itself has recognized the unique problem posed by the application of the usual statute of limitations reasoning processes to radiation exposure cases by the enactment of I.C. §§ 5–242, 5–243 and 5–244, relative to ionizing radiation injuries.

In the present case, construing the evidentiary record most favorably to the plaintiff, which we must do on summary judgment, a factual issue exists as to when a physical injury occurred to Mrs. Davis which would commence the running of the statute of limitations. The trial court did not address this issue in its opinion granting the motion for summary judgment, and the record is unclear on appeal. Our prior cases clearly hold that we do not apply a subjective test, based upon when the claimant knew or in the exercise of reasonable diligence should have known of the damage, because that would amount to a discovery rule which our prior cases have expressly rejected in light of the legislature's explicit rejection of the discovery rule, I.C. § 5–219(4). However, just as in *Streib v. Veigel, supra,* where we held that a flexible reading of I.C. § 5–219(4) was necessary to avoid an absurd result in that case, by the same token in cases involving alleged negligent radiation treatment a cause of action does not accrue until the fact of injury becomes objectively ascertainable.[4] *Streib, supra,* 109 Idaho at 177, 706 P.2d at 66. Because the evidentiary record in this case is either silent or conflicting as to when any such damage occurred, the trial court erred in granting summary judgment based upon the running of the statute of limitations in I.C. § 5–219(4).

We further rule for guidance on remand that the respondents' contention that the case should be dismissed for failure to file a notice of claim under the Idaho Tort Claims Act, I.C. §§ 6–901 *et seq.* is without merit. Neither Bannock Regional Medical Center nor Intermountain Cancer Clinic are political subdivisions or "governmental entities" within the contemplation of that act.

Reversed and remanded for further proceedings consistent herewith.

Costs to appellants.

No attorney fees.

SHEPARD, C.J., and BAKES, J., concur.

BISTLINE, Justice, specially concurring.

For the most part I concur with the opinion authored by Justice Donaldson. I write only to note that today's opinion is refreshingly reminiscent of reasoning offered by the same Justice Donaldson 17 years ago in *Renner v. Edwards,* 93 Idaho 836, 475 P.2d 530 (1970):

> It is manifestly inconsistent and unfair to bar a negligently injured party's cause of action before he even had an opportunity to discover that it existed. *Id.* at 842–43, 475 P.2d at 533–37 (Donaldson, J., specially concurring on rehearing).

---

**3.** The two exceptions are for cases dealing with the placement or inadvertent leaving of a foreign object in the body and the fraudulent concealment of damage by the defendant. I.C. § 5–219(4).

**4.** By this, we mean that objective medical proof would support the existence of an actual injury.

Chief Justice Shepard 17 years ago in *Renner* was then of the same altruistic tenor:

It would, in our opinion, be manifestly unjust to bar the enforcement of injury claims brought by a plaintiff who was not, nor could not have known that he was, the victim of tortious conduct because the consequent harm was unknowable within two years of the negligent act....

....

... No statute should be construed to bring about a patently inane result; *moreover, we have often said the legislature could never be presumed to have intended to enact laws which are absurd, unjust or unreasonable. Id.* at 839, 475 P.2d at 533 (emphasis added).

Justice McQuade agreed with the foregoing language of Justice Shepard, as did Justice Donaldson. Lamentably, notwithstanding that three justices were of a like mind, in the years following *Renner*, this Court forgot the heights to which it had risen, and commenced a period of obsequious deference to the legislature's 1971 amendment of I.C. § 5–219(4).[1] *See, e.g., Theriault v. A.H. Robins Co., Inc.,* 108 Idaho 303, 698 P.2d 365 (1985); *Holmes v. Iwasa,* 104 Idaho 179, 657 P.2d 476 (1983); *Twin Falls Clinic & Hospital v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982); *Owyhee County v. Rife,* 100 Idaho 91, 593 P.2d 995 (1979); *Martin v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978).

However, our better recent cases, today's included, have reestablished support for the proposition that a literal application of the language of the 1971 amendment would lead to absurd results, depending on the specific facts before the Court. *See Corbridge v. Clark Equipment,* 112 Idaho 85, 88, 730 P.2d 1005, 1008 (1986) (The sale of an allegedly mislabeled product which causes a personal injury more than two years after the sale takes place, "[W]e

have *never held* that a statute of limitations may run before an aggrieved party suffers damages." *Dicta* (emphasis original)); *accord, Streib v. Veigel,* 109 Idaho 174, 178, 706 P.2d 63, 67 (1985); *Blake v. Cruz,* 108 Idaho 253, 260, 698 P.2d 315, 322 (1985).

A sadly missing feature of today's majority opinion, however, is language stating that to interpret I.C. § 5–219(4) as requiring that the statute would commence running prior to some objectively detectable proof of injury could raise a serious conflict with *art. 1, § 18* of the Idaho Constitution. Such was humbly first suggested to other members of the Court in *Streib v. Veigel,* 109 Idaho at 179, 706 P.2d at 68, [Bistline, J., specially concurring]; *Theriault v. A.H. Robins Co., Inc.,* 108 Idaho at 309, 698 P.2d at 371 (1985) [Bistline, J., dissenting]. In *Theriault,* it was only Justice Huntley who noted my caution that:

By refusing to hold that a cause of action accrues under I.C. § 5–219(4) only after the injured party discovers (or reasonably should have discovered) the facts giving rise to his or her cause of action, the majority is seemingly oblivious to art. 1, § 18 of the Idaho Constitution, wherein it mandates that: "Courts of justice shall be *open to every person,* and a speedy remedy afforded for *every injury* of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice." (Emphasis added.)

... This Court's acquiescence in the legislature's amending of I.C. § 5–219(4), so as to only allow application of the discovery rule in cases involving foreign objects or fraudulent concealment, is a judicial abrogation of this Court's duty to uphold and protect the constitutional rights of the citizens of this state.

It is conceded that the legislature can legislate, but in so doing, it cannot contravene the Constitution. This Court

---

1. The celebrated amendment provided in relevant part:

[B]ut in all other actions, whether arising from professional malpractice or otherwise the cause of action shall be deemed to have accrued as of the time of the occurrence, act

or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom.... 1971 Idaho Sess.Laws ch. 180, p. 847 (1971).

should not be party to the closing of the courtroom door before a plaintiff has learned that he had good cause for judicial redress. As the United States Supreme Court long ago declared:

> It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; *if it should do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions.* *Wilson v. Iseminger,* 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902) (emphasis added).

In simple direct language the Idaho Constitution directs that the courts of this state be open to *every person,* and a speedy remedy afforded for *every* injury suffered. This Court should be the first to heed this mandate. Nothing justifies ignoring it.

This is not to say that art. 1, § 18 invalidates statutes of limitations *per se.* Clearly, such is not the intent of § 18. What this section does provide, however, is that all people have a reasonable opportunity to seek redress through this state's court system. Fundamental fairness requires no less. *Theriault, supra,* 108 Idaho at 309, 698 P.2d at 371 (emphasis original).

Accolades would have fallen to Justice Donaldson today had he frankly and forthrightly acknowledged that this Court has a *duty,* in fact, a constitutional mandate, to balance any legitimate deference to the legislature against the obligation that resides uniquely with this judicial branch of government to uphold and protect the constitutional rights of the citizens of this state.

Of course, this is not a concept new to me or to American jurisprudence. Indeed, when such confrontations occur, it is "emphatically the province and duty of the judicial department to say what the law is."

*Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

HUNTLEY, J., concurs.

HUNTLEY, Justice, concurring specially.

I concur in the majority opinion, noting that to interpret I.C. § 5–219(4) as requiring that the statute would commence running prior to the occurrence of some objectively detectable proof of injury could give rise to a serious conflict with art. I, § 18 of the Idaho Constitution.

Although the legislature may establish reasonable statutes of limitation, a statute of limitation so drafted as to *preclude,* as distinguished from *limit,* access to the courts would be unconstitutional. That is to say, there must be provided some reasonable "window of opportunity" for an aggrieved party to file an action because art. I, § 18 provides to Idaho's injured citizens a *fundamental right* of access to the courts of justice:

> **Justice to be freely and speedily administered.**—Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice.

Relying on art. II, § 16 of the Montana Constitution, which guarantees that all persons shall have a "speedy remedy ... for every injury of person, property or character," the Montana Supreme Court held that the right to bring a civil action for personal injuries is a fundamental right, any infringement of which is subject to a strict scrutiny analysis. *White v. State,* 203 Mont. 363, 661 P.2d 1272, 1274–75 (1983). Applying the strict scrutiny analysis, that court struck down a statute limiting recoveries against the state to certain dollar amounts (and for certain kinds of damages) as unjustifiably discriminatory against those severely victimized by government tortfeasors.

The reasoning in *White* is persuasive and, more importantly, art. II, § 16 of the

Montana Constitution is analogous to art. I, § 18 of the Idaho Constitution.

BISTLINE, J., concurs.