NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 27

No. 23-AP-217

| | |
|---|---|
| Shirley Ann Carpin | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Vermont Yankee Nuclear Power Corporation et al. | March Term, 2024 |

Helen M. Toor, J.

Kristin A. Ross of Rousseau & Ross, PLLC, Lebanon, New Hampshire, and Benjamin D. Braly and Todd Barnes of Dean, Omar, Branham Shirley, LLP, Dallas, Texas, and Indianapolis, Indiana, for Plaintiff-Appellant.

Hannah C. Waite and Matthew J. Greer of Sheehey Furlong & Behm P.C., Burlington, for Defendant-Appellee Vermont Yankee Nuclear Power Corporation.

Joseph Galanes of Phillips, Dunn, Shriver & Carroll, P.C., Brattleboro, and Maria E. DeLuzio and Melissa M. Malloy of Pierce Davis & Perritano LLP, Boston, Massachusetts, for Defendant-Appellee Clifton Associates, Inc.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Johnson, J. (Ret.), Specially Assigned

¶ 1. **EATON, J.** Plaintiff Shirley Ann Carpin sued defendants, Vermont Yankee Nuclear Power Corporation and Clifton Associates, on behalf of her mother's estate for negligence and wrongful death. Plaintiff alleged that defendants caused the asbestos exposure that led to her mother's mesothelioma and subsequent death. The civil division granted summary judgment to defendants based on the twenty-year statute of repose under 12 V.S.A. § 518(a), finding the "last occurrence" to which her mother's mesothelioma was attributed fell outside the repose period. On

appeal, plaintiff argues that her claims are not barred by § 518(a)'s repose period and, in the alternative, that § 518(a) violates the Vermont Constitution. We affirm.

¶ 2. The following are the relevant, undisputed facts drawn from the record. Plaintiff's mother, Shirley Hilster, was exposed to asbestos (a hazardous material formerly used as an insulator) through her husband, who worked as a pipefitter and regularly came home with asbestos-contaminated clothes. For approximately eighteen months between 1971 to 1972, Hilster's husband worked for defendant Vermont Yankee Nuclear Power Corp., where defendant Clifton Associates had installed asbestos. Hilster's husband retired from pipefitting in 1995. Roughly twenty-five years after her husband's retirement, in July 2020, Hilster was diagnosed with mesothelioma, a cancer caused by asbestos exposure. Hilster died from mesothelioma three months later.

¶ 3. As the executrix of her mother's estate, plaintiff sued defendants in July 2021, alleging negligence and wrongful death. Plaintiff alleged that Hilster's death resulted from exposure to "asbestos . . . brought home on [her husband's] work clothes, vehicle and on his body." Three expert reports, produced during discovery and submitted in support of defendants' motions for summary judgment, discuss the nature and cause of mesothelioma at length. Relevant to this appeal, the report from Dr. Arnold Brody indicated that "[a]sbestos exposure is the only known environmental cause of mesothelioma" and that these exposures "induce the genetic errors" that result in cancer. He further explained that the cellular changes that occur after the asbestos exposure are not the cause of mesothelioma; rather, they are part of the "[l]atency . . . period" that culminates in the "clinical presentation of disease." The report from Dr. Edwin Holstein averred that "[m]esothelioma is a single indivisible injury . . . caused by . . . asbestos exposures." He concluded that, in Hilster's case, "asbestos exposures . . . constituted the direct and sole cause of her . . . mesothelioma." He also corroborated that exposure to "asbestos fibers set up an inflammatory reaction" that leads to the disease, but ultimately it is the "asbestos that the patient

2

breathes that is the cause of the disease." Lastly, the report from Dr. Brent Staggs affirmed that "[a]sbestos fibers . . . caus[e] injury to the cells" but did not state whether mesothelioma had any proximate cause other than asbestos exposure.[1]

¶ 4. Post-discovery, defendants moved for summary judgment, arguing that plaintiff's claims were barred by the twenty-year statute of repose, which provides that:

> An action to recover for ionizing radiation injury or injury from other noxious agents medically recognized as having a prolonged latent development shall be commenced within three years after the person suffering the injury has knowledge or ought reasonably to have knowledge of having suffered the injury and of the cause thereof, but in no event more than 20 years from the date of the last occurrence to which the injury is attributed.

12 V.S.A. § 518(a) (emphasis added). Plaintiff agreed that asbestos was a "noxious agent" and that mesothelioma was an "injury . . . medically recognized as having a prolonged latent development." Nonetheless, plaintiff argued that § 518(a) did not bar her claim because the "last occurrence" to which Hilster's mesothelioma is attributed was the cellular changes that resulted in her 2020 mesothelioma diagnosis. She also argued that applying § 518(a)'s statute of repose to bar her claim violated the Vermont Constitution.

¶ 5. The trial court disagreed and granted summary judgment in favor of defendants. Specifically, the court determined that § 518(a) barred plaintiff's claims because the "last occurrence" to which Hilster's mesothelioma was attributed was her last known exposure to

---

[1] Dr. Staggs's report concluded that "the last occurrence to which an asbestos cancer can be attributed are th[e] cellular injuries . . . which occur immediately prior to the onset of symptoms and/or diagnoses of the cancer." Plaintiff relies on this aspect of the expert's report to argue that § 518(a) does not bar her claim. Clifton argues that this Court is not bound by this aspect of Dr. Stagg's report. We agree. What constitutes a "last occurrence" under § 518(a) is a question of law for the court to decide. See Vance v. Locke, 2022 VT 23, ¶ 19, 216 Vt. 423, 279 A.3d 689 ("The interpretation of a statute['s text] is a question of law."). Thus Dr. Stagg's "last occurrence" comment is beyond the scope of an expert's report. See State v. Muscari, 174 Vt. 101, 111, 807 A.2d 407, 415 (2002) ("[E]xpert testimony may not be used to allow a witness to give legal conclusions."); see also Morais v. Yee, 162 Vt. 366, 371-72, 648 A.2d 405, 409 (1994) ("The rules regarding expert testimony cannot be skewed to preclude summary judgment any time a party secures an expert to support its claim.").

asbestos in 1995.  The court further concluded that the statute was constitutional.  Plaintiff filed a motion to reconsider, which the court denied, reiterating its conclusion that Hilster's "cellular damage . . . from the asbestos exposure is not an 'occurrence' to which [her] injury is attributed."  Plaintiff appeals, arguing that § 518(a) does not bar her claim and, alternatively, that § 518(a) violates the Vermont Constitution.

## I.  Standard of Review

¶ 6.    We review motions for summary judgment using the same standard as the trial court and draw all reasonable inferences in the light most favorable to the nonmoving party to determine "whether there are genuine issues of material fact."  Carr v. Peerless Ins. Co., 168 Vt. 465, 466, 724 A.2d 454, 455 (1998); see V.R.C.P. 56(a) (stating summary judgment standard).[2]  We review constitutional challenges de novo and place the burden on the challenger by presuming that statutes are constitutional.  State v. Labrecque, 2020 VT 81, ¶ 18, 213 Vt. 635, 249 A.3d 671 (mem.); Vt. Hum. Rts. Comm'n v. State Agency of Transp., 2012 VT 88, ¶ 12, 192 Vt. 552, 60 A.3d 702; see Badgley, 2010 VT 68, ¶ 20 (explaining that "the proponent of a constitutional challenge" like plaintiff here "has a very weighty burden to overcome").

## II.  Application of the Statute of Repose

¶ 7.    Plaintiff first argues that § 518(a) does not bar her claim.  Section 518(a) provides both a three-year statute of limitations, which runs from the time the victim's injury is discovered, and a twenty-year statute of repose, which runs from the "last occurrence to which the [victim's] injury is attributed."  12 V.S.A. § 518(a).  Only the latter is relevant to plaintiff's appeal.  Specifically, plaintiff argues that § 518(a)'s statute of repose has not yet expired because the "last

---

[2]  Plaintiff's prior motion to reconsider does not impact the standard of review in this case.  See Morrisville Lumber Co. v. Okcuoglu, 148 Vt. 180, 182, 531 A.2d 887, 888 (1987) (applying same summary judgment standard even where party appealed denial of motion to reconsider).

occurrence" to which Hilster's injury is attributable is the cellular injuries that resulted in Hilster's mesothelioma, which arose within twenty years of plaintiff's claim.

¶ 8. This Court has interpreted the meaning of "last occurrence" in one prior decision, Cavanaugh v. Abbott Laboratories, 145 Vt. 516, 496 A.2d 154 (1985). There, we held that the plaintiff had successfully identified a last occurrence that fell within twenty years of her claim. The plaintiff had been exposed to a synthetic hormone in utero. Id. at 520-21, 496 A.2d at 157. At approximately thirteen-years-old, she began menstruating. Id. At age twenty-two, she was diagnosed with vaginal adenocarcinoma, a form of cancer. Id. The plaintiff sued the hormone manufacturers for negligence. Id. The defendants moved for summary judgment, arguing that more than twenty years had passed since the plaintiff's exposure to the synthetic hormone and, therefore, her claim was barred. Id. We disagreed. We found "no ambiguity in the . . . statute of repose [under] 12 V.S.A. § 518(a)" and therefore applied § 518(a) according to its plain meaning. Id. at 529, 496 A.2d at 162.[3] Based on that plain meaning, we concluded that the "last occurrence" was the most recent proximate cause that resulted in the victim's injury, regardless of whether it was "related to a defendant's negligent act." Id. As to the plaintiff in Cavanaugh, a medical expert's affidavit indicated there were multiple causes of the plaintiff's adenocarcinoma, including her in utero synthetic hormone exposure and her onset of menstruation years later. Id. at 519, 496 A.2d at 156-57. Because the latter proximate cause occurred less than twenty years before the plaintiff filed suit, § 518(a) did not bar the plaintiff's claims. Id. at 530, 496 A.2d at 157, 163.

¶ 9. In this case, plaintiff identifies no proximate cause of Hilster's mesothelioma that arose within twenty years of plaintiff's claim. Unlike in Cavanaugh, where the record indicated that there were multiple proximate causes of the plaintiff's adenocarcinoma, see 145 Vt. at 519-

---

[3] Because we already concluded in Cavanaugh that § 518(a)'s text is unambiguous, we need not consider its legislative history to resolve this appeal. See Zullo v. State, 2019 VT 1, ¶ 63, 209 Vt. 298, 205 A.3d 466 (explaining that this Court will "enforce unambiguous statutes according to their plain language . . . without . . . resort[ing] to legislative history").

21, 530 496 A.2d at 157, 163, the record here indicates no proximate cause of Hilster's mesothelioma other than her asbestos exposures. Rather, the three reports from the medical experts all corroborate that "[a]sbestos exposure is the only known . . . cause of mesothelioma" and thus the "sole cause" of Hilster's mesothelioma was her "ongoing asbestos exposures," which the parties agree occurred no later than 1995. Because the most recent proximate cause of her mesothelioma, her final exposure to asbestos in 1995, occurred more than twenty years before plaintiff filed suit, § 518(a) bars plaintiff's claims.

¶ 10. Plaintiff mistakenly attempts to analogize Cavanaugh by framing Hilster's "last occurrence" as the cellular injuries in her lungs immediately prior to her diagnosis of mesothelioma in 2020. Cavanaugh, however, does not support this distinction. In Cavanaugh, the "last occurrence," specifically the commencement of menstruation, arose outside the development of the plaintiff's latent disease itself. 145 Vt. at 519, 496 A.2d at 157. There is no such occurrence here. As the trial court correctly reasoned, Hilster's "cellular injuries . . . prior to the onset" of mesothelioma were not the last occurrence to which her mesothelioma could be attributed; the cellular changes were "just a step in the gradual [latent] formation of the injury that had continued since the last asbestos exposure." There is a difference between the last occurrence causing the injury and the last step in the development of the injury. Plaintiff argues the latter controls for purposes of the statute of repose, but § 518(a) is clear that it is the former against which the statute of repose is measured.

¶ 11. Plaintiff's proposed construction of "last occurrence" also conflicts with our prior interpretation of the term "noxious agent" as used in § 518(a). In Campbell v. Stafford, the plaintiff sued her doctor for failure to properly treat her thyroid cancer and relied on § 518(a)'s limitations period to assert that her claim was timely. 2011 VT 11, ¶¶ 12-13, 189 Vt. 567, 15 A.3d 126 (mem.). She claimed that the cellular damage that led to her thyroid cancer was a "noxious agent," and therefore the limitations period under § 518(a) applied. Id. ¶ 15; see 12 V.S.A. § 518(a) (providing

6

in part that action to recover for "injury from other noxious agents medically recognized as having a prolonged latent development shall be commenced within three years after the person suffering the injury has knowledge or ought reasonably to have knowledge of having suffered the injury"). We held that the plaintiff's cancer was not itself a "noxious agent" because "agent," as used in § 518, referred to substances originating outside the body. Id. ¶¶ 14-16.

¶ 12. A similar logic applies here. Hilster's "injury," the latent cellular changes that resulted in the presentation of mesothelioma, is not an "occurrence" because § 518(a)'s text distinguishes between "occurrence" and "injury." If "occurrence" were read as synonymous with the development of a latent injury itself, this would contravene § 518(a)'s plain meaning and the Legislature's decision to classify "occurrence" and "injury" as separate terms. See New Eng. Phoenix Co. v. Grand Isle Veterinary Hosp., Inc., 2022 VT 10, ¶ 20, 216 Vt. 227, 275 A.3d 134 ("[W]e presume that the Legislature chooses statutory language intentionally, so different words carry different meanings." (quotation omitted)); accord Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153-54 (2013) (indicating that courts should read different terms in statute to have different meanings).

¶ 13. Plaintiff further argues that Hilster's cellular injuries are the "last occurrence" by attempting to distinguish different types of latent diseases. This distinction is unavailing. In relevant part, plaintiff claims that a disease like asbestosis, which is also caused by asbestos exposure, would fall within this statute of repose because it "begins as soon as [asbestos is] inhaled," while mesothelioma would not because its last occurrence is the cellular changes. Plaintiff's desire to exempt mesothelioma from the statute, however, has no basis in § 518(a)'s text, which does not parse between types of latent diseases. See 12 V.S.A. § 518(a); accord Cavanaugh, 145 Vt. at 529, 496 A.2d at 162 (applying § 518(a) according to its plain meaning). More broadly, plaintiff fails to identify a specific time when the "last occurrence" of Hilster's cellular injuries happened, making it impossible to discern when the repose period would begin to

run under her proposed interpretation of § 518(a).  Cf. Cavanaugh, 145 Vt. at 529, 496 A.2d at 162 (relying on specific period when last occurrence arose in applying § 518(a)'s statute of repose).

¶ 14.    Accepting plaintiff's interpretation of "last occurrence" to include cellular injuries would result in conflating the three-year limitations period with the twenty-year repose period.  See 12 V.S.A. § 518(a).  Statutes of repose and limitations both seek to bar belated claims, but their applications differ.  See CTS Corp. v. Waldburger, 573 U.S. 1, 7-10 (2014) (comparing purposes of repose and limitations statutes).  While a statute of limitations (like the three-year period in § 518(a)) bars a plaintiff's claim based on when the plaintiff's injury was discovered, a statute of repose (like the twenty-year period in § 518(a)) bars a claim based on an external event or action, which may arise before the injury had resulted.  See 12 V.S.A. § 518(a).  CompareStatute of Limitations, Black's Law Dictionary (11th ed. 2019), with Statute of Repose, Black's Law Dictionary (11th ed. 2019).  Thus, if the "last occurrence" was the last cellular injury before Hilster's diagnosis, as plaintiff asserts, § 518(a)'s repose period would never run.  Under plaintiff's theory, the discovery of the injury that starts the limitations period, the cellular injuries that resulted in the presentation of mesothelioma, would be the same event that starts the repose period, rendering the statute of repose mere surplusage.  See In re 204 N. Ave. NOV, 2019 VT 52, ¶ 7, 210 Vt. 572, 218 A.3d 24 (holding that, "[w]hen interpreting a statute, we presume . . . the Legislature did not intend to create surplusage" by adding unnecessary statutory text (internal quotation omitted)).  Such a result would be contrary to the Legislature's clear intent to create both a statute of limitations and a statute of repose in § 518(a).  See Earth Constr., Inc. v. Agency of Transp., 2005 VT 82, ¶ 5, 178 Vt. 620, 882 A.2d 1172 (mem.) ("When interpreting statutes, the Court's task is to effectuate the . . . intent of the Legislature.").

¶ 15.    Although it may appear unfair to bar plaintiff's claims under § 518(a), especially when the repose period expired before Hilster was diagnosed with mesothelioma, that is the result of the policy expressed in the statute.  As Cavanaugh recognized, § 518(a)'s repose period "reflects

8

a balance" of interests. 145 Vt. at 531, 496 A.2d at 163 (citing F. McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am. U.L. Rev. 579, 588 (1981)). Statutes of repose like the one at issue seek to provide defendants with "certainty" and "eliminat[e] potential abuses from stale claims" at the cost of "denying certain plaintiffs a remedy at common law for injury." Id. The Legislature's intent in adopting a twenty-year repose period under § 518(a) is thus precisely designed to "limit[] . . . liability in many . . . cases," including the case here. Id. Therefore, "[i]f the main thrust of a statute" like § 518(a) " 'seems unfair or unjust, the remedy must be sought in a legislative change. It cannot be furnished by judicial action in the guise of interpretation.' " Id. (quoting King v. Snide, 144 Vt. 395, 404, 479 A.2d 752, 756 (1984)).

### III. Constitutionality of § 518(a)

¶ 16.   Plaintiff next argues, in the alternative, that § 518(a)'s repose period violates Article 7 of the Vermont Constitution, which states that our "government is . . . instituted for the common benefit . . . of the people . . . and not for the particular . . . advantage of [a] single . . . set of persons[] who are a part only of that community."[4] Vt. Const. ch. I, art. 7.

---

[4] Plaintiff additionally argues that § 518(a)'s statute of repose violates Article 4 of the Vermont Constitution, which provides that "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries." Vt. Const. ch. I, art. 4. We decline to review this claim because plaintiff failed to adequately brief it beyond a passing reference to Article 4's text, offering no authority to demonstrate how this provision applies to her circumstance. See State v. Bergquist, 2019 VT 17, ¶ 64 n.13, 210 Vt. 102, 211 A.3d 946 ("We will not consider issues, even those of a constitutional nature, that are insufficiently raised and inadequately briefed."); accord Pease v. Windsor Dev. Review Bd., 2011 VT 103, ¶ 29 n.4, 190 Vt. 639, 35 A.3d 1019 (mem.) (declining to consider Article 4 challenge for failure to adequately brief issue); Fitzgerald v. Congleton, 155 Vt. 283, 295-96, 583 A.2d 595, 602 (1990) (same). Even if we were to address this argument, it is settled that Article 4 guarantees a right to judicial process analogous to the federal Due Process Clause, not a right to specific remedies. A.B. v. S.U., 2023 VT 32, ¶ 9, __ Vt. __, 298 A.3d 573; see Levinsky v. Diamond, 151 Vt. 178, 197, 559 A.2d 1073, 1086 (1989) (explaining this Court has never cited Article 4 "to give rise to a substantive constitutional right"), overruled on other grounds by Muzzy v. State, 155 Vt. 279, 583 A.2d 82 (1990); Shields v. Gerhart, 163 Vt. 219, 223, 658 A.2d 924, 928 (1995) (asserting Article 4's purpose is "ensur[ing] access to the judicial process"). Because plaintiff presents no basis on which she was denied judicial process, her attempt to invalidate § 518(a) under Article 4 is without merit. See Lillicrap v. Martin, 156 Vt. 165, 178, 591 A.2d 41, 48 (1989) (holding that "the [L]egislature may impose reasonable limitations on rights of action" so long as it does not "annul vested rights"); Bates v. Kimball, 2 D. Chip. 77, 84-85 (Vt. 1824) ("That the Legislature ha[s] the

9

¶ 17. We established our standard for reviewing Article 7 challenges in Baker v. State, 170 Vt. 194, 213-14, 744 A.2d 864, 878-79 (1999). We first "define that 'part of the community' disadvantaged by the law" and delineate the "excluded class as suspect, quasi-suspect, or non-suspect for purposes of determining different levels of judicial scrutiny." Id. at 213, 744 A.2d at 878. We then consider the purpose of the classification to decide if "it is reasonably necessary to accomplish the State's claimed objectives" and, ultimately, whether the classification "bears a reasonable and just relation to the governmental purpose" of the statute. Id. at 213-14, 744 A.2d at 878-79. To make this determination, we must look at whether the statute's classification advances the State's purported goals and whether the statute's classification is overinclusive or underinclusive. Id. at 214, 744 A.2d at 879.

¶ 18. In Baker, the plaintiffs, three same-sex couples, were denied marriage licenses and later challenged the constitutionality of Vermont's marriage statutes based on Article 7. Id. at 199, 744 A.2d at 868. We held the statutes violated Article 7 because they classified community members based on sex and expressly disadvantaged same-sex couples by excluding them from marriage. Id. at 215, 744 A.2d at 880. The statutes did not advance the State's alleged purpose, "furthering the link between procreation and child rearing," because not all opposite-sex couples can or do have children, while some same-sex couples can and do. Id. at 222, 744 A.2d at 884-85.

¶ 19. In subsequent decisions, however, we have generally rejected attempts to invalidate statutes that provide procedural limitations, such as § 518(a), under Baker's Article 7 test. For example, in Vermont Human Rights Commission v. State of Vermont, Agency of Transportation, we declined to invalidate a statutory six-month time limit on claims brought against the State. 2012 VT 88, ¶ 13. The six-month time limit accomplished the Legislature's purpose of encouraging "informal resolution of some discrimination claims" by maintaining

power . . . [to] prescribe the mode in which causes shall be brought before them . . . is readily admitted.").

10

judicial efficiency without arbitrarily discriminating against any protected part of the community. Id. ¶ 15. Similarly, in Quinlan v. Five-Town Alliance, Inc., we upheld a statute requiring plaintiffs in medical malpractice cases to file both a certificate of merit and complaint. 2018 VT 53, ¶ 15, 207 Vt. 503, 192 A.3d 390. The different filing requirements did not intentionally disadvantage any group because they treated potential plaintiffs the same and were reasonably related to the state's goal of preventing frivolous medical malpractice claims by "screen[ing] out meritless claims at the outset." Id. ¶ 18.

¶ 20. Here, § 518(a)'s statute of repose does not arbitrarily disadvantage any part of the community. We have not recognized people with latent diseases as a suspect class and, more generally, have often narrowly defined what groups constitute suspect classes. See, e.g., Trivento v. Comm'r of Corr., 135 Vt. 475, 479, 380 A.2d 69, 72 (1977) (declining to classify criminals in psychopathic therapy as suspect class); Andrews v. Lathrop, 132 Vt. 256, 259, 315 A.2d 860, 862 (1974) (declining to classify people subject to land gains tax as suspect class); cf. Baker, 170 Vt. at 233-35, 744 A.2d at 892-93 (Dooley, J., concurring) (recognizing same-sex couples as quasi-suspect class). While § 518(a) does divide individuals according to when they can bring claims, the statute still maintains a maximum period of twenty years in which to bring claims. See Vt. Hum. Rts. Comm'n, 2012 VT 88, ¶ 13 (validating different time limits imposed on state and Vermont Human Rights Commission because both were "free to bring an action at some point").[5]

---

[5] Plaintiff argues that there was, in effect, no time in which she could have brought this action because the repose period tolled before Hilster received her mesothelioma diagnosis. Even when viewed in plaintiff's favor, this fails to sustain plaintiff's facial challenge to § 518(a). Plaintiff argues, in essence, that § 518(a)'s statute of repose is facially invalid, claiming it is unconstitutionally "arbitrary" not only as applied in Hilster's case but also for anyone suffering from latent disease. A facial challenge, however, requires a party to show "that no set of circumstances exists under which a statute . . . could be valid." Ferry v. City of Montpelier, 2023 VT 4, ¶ 26, __ Vt. __, 296 A.3d 749 (quoting In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 22, 212 Vt. 554, 238 A.3d 637). Because there are circumstances in which parties with latent disease can bring claims, if a claim is brought within twenty years of the last occurrence, the fact that Hilster's injury was never actionable fails to sustain her facial constitutional challenge. See id.

¶ 21. Imposing time limits on causes of action, such as a statute of repose, is a valid and "long-standing legislative prerogative." Id. ¶ 14 (citing Bd. of Regents of Univ. of N.Y. v. Tomanio, 446 U.S. 478, 487 (1980)). This Court has perennially recognized that statutes of repose advance the proper administration of justice by upholding fairness to defendants and preventing stale claims. See Davis v. Converse, 35 Vt. 503, 509 (1863) (asserting purpose of statues of repose is "protection against stale and unjust claims"); Inv. Props., Inc. v. Lyttle, 169 Vt. 487, 492, 739 A.2d 1222, 1226 (1999) (explaining statutes of repose reflect "what the legislature deems a reasonable time to present . . . claims"); Vt. Hum. Rts. Comm'n, 2012 VT 88, ¶ 14 (explaining statutes of repose aid in "fairness to defendants, protecting the court's interest in reliance . . . and guarding against stale demands"). This case exemplifies the possible risks that may arise with stale claims. Hilster's exposure to asbestos from her husband's work at Vermont Yankee occurred over fifty years ago, and thus this case could present issues regarding the availability of documents and witnesses if it proceeded.

¶ 22. By providing a twenty-year repose period for latent-disease claims in § 518(a), the Legislature balanced these considerations by imposing a reasonable time to bring claims that is not overinclusive. See Carter v. Fred's Plumbing & Heating Inc., 174 Vt. 572, 575, 816 A.2d 490, 494 (2002) (mem.) (asserting Legislature has "authority to define and limit a cause of action."); Badgley v. Walton, 2010 VT 68, ¶ 24, 188 Vt. 367, 10 A.3d 469 (explaining "[o]ur function is not to substitute our view of the appropriate balance for that of the Legislature"). Interpreting § 518(a) as anything other than a reasonable policy choice would be to substitute our judgment for that of the Legislature's. See Vt. Hum. Rts. Comm'n, 2012 VT 88, ¶ 15 (upholding six-month time limit because "[w]e accord deference to the policy choices made by the Legislature"); Quinlan, 2018 VT 53, ¶ 19 (upholding statutory filing requirement because "[i]t is the legislative choice to implement the policy").

¶ 23. The cases plaintiff cites from other jurisdictions striking down statutes of repose as unconstitutional are inapposite. The statutory and constitutional provisions they rely on differ significantly from both the statute of repose in § 518(a) and Article 7 of the Vermont Constitution. See, e.g., Heath v. Sears, Roebuck & Co., 464 A.2d 288, 295-96 (N.H. 1983) (declaring statute of repose unconstitutional because court had history of resisting statutes of repose); see also, e.g., Dickie v. Farmers Union Oil Co., 2000 ND 111, ¶¶ 6, 12, 611 N.W.2d 168 (declaring statute of repose unconstitutional because it lacked "close correspondence," as was required, between statute's classification and its goal of controlling products-liability insurance).

¶ 24. More relevant are the cases from those jurisdictions that uphold statutes of repose with nearly identical language to our own, some of which impose even stricter time limits than the twenty-year repose period under § 518(a). See, e.g., Davis v. Moran, 735 P.2d 1014, 1017-19 (Idaho 1987) (validating statute of repose that limited claims to within "thirty [] years from the date of the last occurrence to which the injury is attributed"); Arnold v. Woolley, 514 P.2d 599, 601-02 (Idaho 1973) (same); see also, e.g., Stearns v. Metro. Life Ins. Co., 117 N.E.3d 694, 702 (Mass. 2019) (upholding six-year statute of repose for asbestos-related claims); City of Neodesha v. BP Corp. N. Am., 334 P.3d 830, 864 (Kan. 2014) (upholding ten-year statute of repose).

¶ 25. Because the plain meaning of § 518(a)'s twenty-year repose period bars plaintiff's claims and such a result is not contrary to Article 7 of the Vermont Constitution, we affirm the court's order granting summary judgment to defendants on all three claims.

Affirmed.

FOR THE COURT:

_____

Associate Justice

13